In the
United States Court of Appeals
For the Seventh Circuit

No. 99-1853

GREGORY W. MOORE,

Plaintiff-Appellant,

v.

J.B. HUNT TRANSPORT, INC., d/b/a
J.B. HUNT DRIVER TRAINING CENTER,

Defendant-Appellee.


Appeal from the United States District Court
for the Central District of Illinois.
No. 96 C 2036--Harold A. Baker, Judge.


Submitted January 5, 2000--Decided July 19, 2000


   Before POSNER, Chief Judge, and EASTERBROOK and
RIPPLE, Circuit Judges.

   RIPPLE, Circuit Judge.  Gregory Moore brought
this action pursuant to the Americans with
Disabilities Act of 1990 ("ADA"), 42 U.S.C. sec.
12101 et seq. He claimed that his former
employer, J.B. Hunt Transport, Inc. ("Hunt"),
terminated his employment as a result of his
rheumatoid arthritis. The district court granted
summary judgment for Hunt, finding that Mr. Moore
was not disabled for purposes of the ADA. For the
reasons set forth in the following opinion, we
affirm the judgment of the district court.

I
BACKGROUND
A.  Facts/1
1.

   Mr. Moore has suffered from rheumatoid arthritis
with Heberden's nodes since 1989. Rheumatoid
arthritis is an inflammatory disease of the
joints that causes the joints to swell and to
stiffen. It is a chronic condition, permanent in
nature. The impairments resulting from arthritis,
however, cover a wide range and vary from
individual to individual. Heberden's nodes are
bumps that form on the joints of individuals who
have had arthritis for two or more years.
Individuals with advanced rheumatoid arthritis

also can be subject to "flare-ups," which result in temporary incapacitation.

Mr. Moore controls the effects of his arthritis with medication. He normally does not use a cane, and his condition has not prevented him from consistently walking distances up to a mile. According to Mr. Moore, "[i]t just takes me a bit longer to do what everyone else can do quicker." R.31, Moore Dep. at 52. However, Mr. Moore's impairment is also episodic. He has one or two flare-ups per year that last one or two days. During those flare-ups, his joints swell and he is not able to move. Mr. Moore has told Dr. David Hamilton, his former treating physician and also Hunt's referral physician, that the only discernable cause of his flare-ups is a quick change in barometric pressure. Dr. Hamilton has stated that Mr. Moore's arthritis would "probably" make it "a little bit" more difficult to perform manual tasks; that you "might" catch him on a good day; that it "might be" that he could not get out of bed; that he "may not" be able to bend his fingers as well; and that he could "possibly" have difficulty walking. R.37, Hamilton Dep. at 15-17.

2.

In October 1993, Mr. Moore was working in the motor pool at an Air Force base when he applied for a job at Hunt's facility in Rantoul, Illinois. The Director of Hunt's Driver Training Center, Carl Martin, with full knowledge of Mr. Moore's medical condition, hired Mr. Moore for the position of driver training instructor in November 1993.

Hunt has three classifications of driver training instructor: range, road and classroom. A range instructor stands outside the truck on an internal driving range and teaches the student to perform driving maneuvers such as backing, turning and hooking. A road instructor rides as a passenger in a cab while the student drives over external streets and highways. Finally, a classroom instructor teaches rules and procedures in a classroom setting.

At the time he started with Hunt, Mr. Moore was a combined road and range instructor. In February 1994, a notice was posted for anyone interested in a classroom position. Mr. Moore and two other employees responded to the posting and were given an opportunity for a two-week trial period. After two weeks, the candidates were evaluated, and a candidate more qualified than Mr. Moore received the position.

In August 1994, Mr. Moore informed his supervisor, Rick King, that he needed to be

transferred from road instructor to range instructor because the jolts and vibration caused by the inexperienced drivers aggravated his arthritis. Hunt transferred Mr. Moore to range instructor as requested.

In October 1994, Hunt sent Mr. Moore to Dr. Hamilton for his required annual Department of Transportation physical./2 As a result of the physical, Dr. Hamilton reported that Mr. Moore should not be exposed to "excessive cold" or "wet cold damp" environments. R.31, Moore Dep. Ex.A. Dr. Hamilton also noted that Mr. Moore "needs constant monitoring of [blood pressure]" and that he "takes Darvocet W-100 for arthritis." Id. After receiving Dr. Hamilton's report, Hunt sought clarification concerning Mr. Moore's limitations; Dr. Hamilton advised Hunt that Mr. Moore should not be exposed to "excessive cold, wet, damp conditions for prolonged times. That means for anything over, say five minutes, depending on the wind chill factor and absolute temperatures." R.31, Moore Dep. Ex.3.

Hunt also sent Mr. Moore for a computerized strength evaluation recommended by the National Institute of Occupational Safety and Health ("NIOSH"). The NIOSH test reflects the strength of various motions that a person is able to make as compared to the general population. It also provides weight restrictions for occasional lifting, frequent lifting, and continuous lifting. Mr. Moore's NIOSH test results showed no diminished strength when compared to the general population of his size, age and weight; in general, it reflected above average strength for Mr. Moore in most areas, and below average in none. The lifting restrictions for Mr. Moore were average for the general population.

The Training Coordinator at Rantoul, Owen DeWert, advised Martin that, based on Dr. Hamilton's report, Hunt did not have positions that Mr. Moore could fulfill. DeWert, therefore, recommended that Mr. Moore be terminated. Before Mr. Moore was terminated, however, Greer Woodruff, Director of Driver Recruiting for all of Hunt's facilities, was consulted. Woodruff believed that Mr. Moore was not the best candidate to fill classroom vacancies and that the positions of road and range instructors were foreclosed to Mr. Moore because of his prior complaints and Dr. Hamilton's limitations. Martin therefore terminated Mr. Moore's employment on October 27, 1994.

Subsequent to his termination, Mr. Moore gained employment as a charter coach bus driver. In that position, Mr. Moore travels extensively and loads and unloads luggage on a regular basis.

B.  District Court Proceedings

Mr. Moore filed this action in the district court; he claimed that Hunt had terminated his employment as a result of his arthritis and, therefore, in violation of the ADA. After conducting discovery, Hunt moved for summary judgment on the ground that Mr. Moore did not fall within the statutory definition of disability. Hunt argued that Mr. Moore was not disabled in fact and that Hunt did not perceive him as disabled.

In addressing whether Mr. Moore met one of the definitions of disabled, the district court reiterated that, to be disabled under the ADA, an individual's impairment must substantially limit his ability to perform a major life activity. The district court concluded that Mr. Moore's "own deposition testimony reveals that he is able to [walk, sit and stand], but at a pace slower than most people," which would not render him disabled under the ADA. R.42 at 3-4. The court also rejected Mr. Moore's argument that his condition must be assessed in the absence of his medication, which was the sole reason he could maintain his level of functioning. The court held that Mr. Moore had not shown that his level of functioning diminished in the absence of his medication.

Similarly, the district court did not accept Mr. Moore's attempt to show he was disabled because his arthritis limited his ability to work. The court stated:
To prove that he is substantially limited in working, the plaintiff must show that he is significantly restricted in his ability to perform either a class of jobs, or a broad range of jobs in various classes, as compared to the average person having comparable training, skills, and abilities.

Id. Mr. Moore, stated the court, had not shown that he was precluded from a large class of jobs for which he had training, nor did Hunt perceive him as precluded from a large number of jobs, as opposed to unable to perform only the positions of range and road instructor. Consequently, the district court concluded that Mr. Moore was not disabled for purposes of the ADA and entered summary judgment in favor of Hunt. Mr. Moore now appeals the district court's adverse judgment.

II
DISCUSSION
A.  Applicable Standards

We review de novo the district court's grant of

summary judgment. See Silk v. City of Chicago, 194 F.3d 788, 798 (7th Cir. 1999). Summary judgment is proper if the record as a whole shows "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The burden is on the non-moving party to come forward with "'specific facts showing that there is a genuine issue for trial' by referring to the record evidence on file." McClendon v. Indiana Sugars, Inc., 108 F.3d 789, 795-96 (7th Cir. 1997) (quoting Fed. R. Civ. P. 56(e)). "A genuine issue for trial exists only when a reasonable jury could find for the party opposing the motion based on the record as a whole." Pipitone v. United States, 180 F.3d 859, 861 (7th Cir. 1999) (citation omitted).

To establish disability discrimination, Mr. Moore must show that (1) he is disabled within the meaning of the ADA (2) he is qualified to perform the essential functions of the job either with or without reasonable accommodation and (3) he suffered from an adverse employment action because of his disability. See Byrne v. Board of Educ., 979 F.2d 560, 563 (7th Cir. 1992). Mr. Moore's "threshold burden" is to establish that he is disabled as that term is defined in the ADA. Roth v. Lutheran Gen. Hosp., 57 F.3d 1446, 1454 (7th Cir. 1995).

The ADA designates three separate categories of disability:

(A)  a physical or mental impairment that substantially limits one or more of the major life activities of such individual;

(B)  a record of such an impairment; or

(C)  being regarded as having such an impairment.

42 U.S.C. sec. 12102(2); Roth, 57 F.3d at 1454. If Mr. Moore's condition does not rise to the level of a disability as defined by the ADA, then he cannot prevail on his claim even if Hunt terminated him expressly because of his condition. See Sinkler v. Midwest Property Management Ltd. Partnership, 209 F.3d 678, 683 (7th Cir. 2000); Christian v. St. Anthony Med. Ctr., Inc., 117 F.3d 1051, 1053 (7th Cir. 1997) ("The Act is not a general protection of medically afflicted persons. . . . If the employer discriminates against them on account of their being (or being believed by him to be) ill, even permanently ill, but not disabled, there is no violation."), cert. denied, 523 U.S. 1022 (1998). Mr. Moore claims that he is actually disabled under subsection (A) of sec. 12102(2)

because his arthritis is a physical impairment that limits several major life activities. He also claims that Hunt perceived his arthritis as disabling under subsection (C) of sec. 12102(2). We turn first to Mr. Moore's claims of actual disability.

## B.  Actual Disability

In assessing whether a particular condition constitutes a disability for purposes of subsection (A) of 42 U.S.C. sec. 12102(2), the Supreme Court has instructed us to conduct a three-step inquiry. See Bragdon v. Abbott, 524 U.S. 624, 631 (1998). First, we must determine whether Mr. Moore's condition is a physical or mental impairment. See id. at 632. Second, we must identify an affected life activity and determine whether it constitutes a "major life activity" for purposes of the ADA. See id. at 637-38. Finally, we must determine whether the plaintiff's impairment was a substantial limit on the identified major life activity. See id. at 639. Hunt does not dispute that Mr. Moore's arthritis qualifies as an impairment for purposes of the ADA./3 Therefore, we begin our inquiry by asking whether Mr. Moore's arthritis affects one or more major life activities.

It is difficult to discern from Mr. Moore's brief exactly which major life activities, in addition to working, he claims are affected by his arthritis. In his deposition, Mr. Moore identified bowling, camping, restoring cars, and mowing the lawn as activities that he could no longer participate in as a result of his arthritis. Mr. Moore does not argue to this court that these are "major life activities," nor would such an argument be meritorious.

Mr. Moore's deposition testimony also addresses the impact of his arthritis on his ability to walk, which the regulations specifically identify as a major life activity. See 29 C.F.R. sec. 1630.2(i). Mr. Moore, however, fails to mention walking as an affected major life activity in the argument section of his appellate brief. Consequently, Mr. Moore has waived this argument. See Sanchez v. Henderson, 188 F.3d 740, 746 n.3 (7th Cir. 1999) (stating that failure to mention theories in argument section of brief resulted in waiver), cert. denied, 120 S. Ct. 1201 (2000).

Assuming, however, that Mr. Moore had raised walking as an affected major life activity, he still would have to clear the third hurdle of the Bragdon test: whether his arthritis substantially limits his ability to walk. The interpretive regulations define "substantially limits" as "[s]ignificantly restricted as to the condition,

manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which an average person in the general population can perform the same major life activity." 29 C.F.R. sec. 1630.2(j)(1)(ii).

In his deposition, Mr. Moore testified that he walks distances of less than a mile "consistently," that a mile walk "wouldn't be any problem as long as I'm paying attention to what I'm doing," and that the arthritis affects more the "rate and pace" of his activities as opposed to his ability to perform them. R.36, Moore Dep. at 49-52. We do not believe that these limitations constitute "significant restrictions" on Mr. Moore's ability to walk when compared with the ability of the average person, and our conclusion finds support in the case law of our sister circuits. See, e.g., Talk v. Delta Airlines, Inc., 165 F.3d 1021, 1025 (5th Cir. 1999) (holding that "walk[ing] with a limp[,] mov[ing] at a significantly slower pace than the average person" and having difficulty walking in extreme cold did not constitute a substantial impairment as required by the ADA (internal quotation marks omitted)); Kelly v. Drexel Univ., 94 F.3d 102, 106 (3d Cir. 1996) (holding that an individual who could not walk "more than a mile or so," "certainly couldn't jog," and had to "pace [himself] slower" when going upstairs was not substantially limited in the major life activity of walking (internal quotation marks omitted)).

Mr. Moore, however, relies on Dr. Hamilton's statement that he (Mr. Moore) is significantly restricted in "the duration, manner or condition under which [he] can perform a particular major life activity as compared to the average person," R.37, Hamilton Dep. at 19, to establish that he is disabled within the meaning of the ADA. Federal Rule of Civil Procedure 56 requires Mr. Moore to come forward with "specific facts showing that there is a genuine issue for trial" in order to defeat Hunt's motion for summary judgment. Fed. R. Civ. P. 56(e). Dr. Hamilton's statement does not provide "specific facts"; it is "merely conclusory, restating the requirements of the law," Doren v. Battle Creek Health Sys., 187 F.3d 595, 598-99 (6th Cir. 1999). Therefore, it cannot, without more, defeat Hunt's motion for summary judgment.

In addition, Dr. Hamilton's other deposition testimony does little to forward Mr. Moore's cause. We have often stressed the importance of evaluating impairments on an individual basis. See, e.g., Roth, 57 F.3d at 1454. "Some impairments may be disabling for particular

individuals but not for others, depending upon the stage of the disease or disorder, the presence of other impairments that combine to make the impairment disabling or any number of other factors." Homeyer v. Stanley Tulchin Assocs., Inc., 91 F.3d 959, 962 (7th Cir. 1996) (citing 29 C.F.R. App. sec. 1630.2(j)). However, Dr. Hamilton speaks predominately in terms of hypotheticals, not Mr. Moore's actual experiences. General statements concerning rheumatoid arthritis, and the possibility that Mr. Moore might experience various debilitating aspects of the condition, do not establish that Mr. Moore's arthritis rises to the level of a disability.

Finally, Mr. Moore argues that his "flare-ups" cause him to be completely debilitated while they last and that, therefore, the flare-ups render his condition a disability. Mr. Moore cites Vande Zande v. Wisconsin Department of Administration, 44 F.3d 538 (7th Cir. 1995), in support of his argument. We believe Mr. Moore misapprehends the holding of Vande Zande. In that case, the plaintiff was paralyzed from the waist down, and her paralysis made her prone to develop pressure ulcers. The question in that case was not whether Vande Zande was disabled, but whether her employer had a duty to reasonably accommodate her when she developed these ulcers. In that situation, we stated that "an intermittent impairment that is a characteristic manifestation of an admitted disability is, we believe, a part of the underlying disability and hence a condition that the employer must reasonably accommodate." Id. at 544. Mr. Moore does not seek accommodation for an intermittent impairment resulting from an "admitted disability"; instead, he attempts to use his intermittent flare-ups to establish that his impairment is a disability. Vande Zande, therefore, is not controlling. Furthermore, we do not believe that Mr. Moore's infrequent flare-ups, one or two per year, render his condition a disability./4

Mr. Moore devotes the most effort to his argument that he is disabled because his arthritis substantially impairs his ability to work. Mr. Moore claims that Dr. Hamilton's restriction that he not be exposed to cold or damp weather for extended periods of time precludes him from a large number of jobs. Thus, Mr. Moore asserts, he is substantially limited in the major life activity of working.

In the context of working, "substantially limits" means "significantly restricted in the ability to perform a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training,

skills and abilities." 29 C.F.R. sec. 1630.2(j)(3)(i); Skorup v. Modern Door Corp., 153 F.3d 512, 514 (7th Cir. 1998). The inquiry is an individualized one: whether this plaintiff's impairment constitutes a significant barrier to his employment. Accord Forrisi v. Bowen, 794 F.2d 931, 933 (4th Cir. 1986). "Factors to consider include 'the number and type of jobs from which the impaired individual is disqualified, the geographical area to which the individual has reasonable access, and the individual's job expectations and training.'" Byrne, 979 F.2d at 564 (quoting Forrisi, 794 F.2d at 933). "[T]he court must consider the effect of the impairment on the employment prospects of that individual with all of his or her relevant personal characteristics." Mondzelewski v. Pathmark Stores, Inc., 162 F.3d 778, 784 (3d Cir. 1998). "The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working." 29 C.F.R. sec. 1630.2(j)(3)(i).

Mr. Moore asserts that the limitations imposed by Dr. Hamilton, that he not be exposed to cold or damp environments, preclude him from a wide range of jobs including construction trades, farm work, street maintenance, mail delivery, and butchery. However, Mr. Moore has not proffered any evidence that he is either qualified to perform these jobs or would pursue employment in these areas in the absence of his arthritic condition. It may be true that his impairment precludes him from holding these positions; it is also true that they do not represent jobs open to the "average person having comparable training, skills and abilities" to Mr. Moore./5 Consequently, the medical restriction precluding him from these employment opportunities does not render his impairment a disability.

The only other positions which Mr. Moore states are foreclosed to him are those of range and road instructor at Hunt. However, as stated above, the inability to perform a particular job does not substantially limit the major life activity of working. See Byrne, 979 F.2d at 565. To qualify as substantially limiting his ability to work, Mr. Moore's condition must preclude him from a class or range of jobs for which he possesses the necessary training, skills and abilities. Mr. Moore is trained to drive trucks and buses. The restrictions placed on him by Dr. Hamilton do not significantly restrict his employment in these fields; indeed, he is currently employed as a charter bus driver. Cf. Sinkler, 209 F.3d at 685-86 (citing the plaintiff's ability to procure new employment as evidence "that a broad range of jobs remain open to" her). Consequently, Mr. Moore is not substantially limited in the major

life activity of working.

C.  Perceived Disability

Finally, Mr. Moore argues that Hunt perceived him as disabled as a result of his work restrictions and that, therefore, he is disabled under 42 U.S.C. sec. 12102(2)(C).

As set forth above, the definition of disability under the ADA includes "being regarded as having" a physical or mental impairment that substantially limits a major life activity. 42 U.S.C. sec. 12102(2)(C). The Interpretive Guidance to the regulations implementing sec. 12102(2)(C) explains the need for the "regarded as" language:

[A]lthough an individual may have an impairment that does not in fact substantially limit a major life activity, the reaction of others may prove just as disabling.

. . . .

[I]f an individual can show that an employer or other covered entity made an employment decision because of a perception of disability based on "myth, fear or stereotype," the individual will satisfy the "regarded as" part of the definition of disability.

29 C.F.R. Pt. 1630, App. sec. 1630.2(l) at 352 (1999). The concern, therefore, is that employers will act on a misunderstanding of an individual's impairment with the result that a qualified, non-disabled person will be precluded from employment.

In order for Mr. Moore to fall within the language of sec. 12102(2)(C), "[i]t is not enough for [Mr. Moore] to show that [Hunt] was aware of [his] impairment; instead [Mr. Moore] must show that [Hunt] knew of the impairment and believed that [he] was substantially limited because of it." Skorup, 153 F.3d at 515. With respect to the major life activity of work, the standards applicable to an actual disability also apply to a perceived disability:

[Section] 12102(2)(A) looks for proof beyond the plaintiff's inability to satisfy the expectations of a single employer; to be "substantial," a limitation on the ability to work must be one that affects the plaintiff's ability to perform a class or range of jobs before it qualifies as a disabling limitation under the ADA. For purposes of sec. 12102(2)(C), the employer's perception of the plaintiff's inability to work must have a comparable breadth.

Id. (citing Davidson v. Midelfort Clinic, Ltd., 133 F.3d 499, 511 (7th Cir. 1998)). Consequently, Mr. Moore must come forward with evidence that Hunt believed his arthritis precluded him from a class or range of jobs./6

In support of his position, Mr. Moore argues in his brief that "[i]t is clear that J.B. Hunt knew of his impairment and believed he was substantially limited because of it and they felt so strongly about this perception that they fired him." Appellant's Br. at 26. Essentially, Mr. Moore asks this court to assume a perception of disability based on his termination. We, however, have already rejected such an appeal. In Harrington v. Rice Lake Weighing Sys., Inc., 122 F.3d 456 (7th Cir. 1997), we stated:

Even if [the employer] had fired [the plaintiff] because of his injury, he would not necessarily have a claim under the ADA. "The Act is not a general protection of medically afflicted persons. . . . [I]f the employer discriminates against them on account of their being (or being believed by him to be) ill, even permanently ill, but not disabled, there is no violation."

Id. at 460 (quoting Christian, 117 F.3d at 1053). The fact that Mr. Moore was terminated as a result of his condition, therefore, is not sufficient to establish that Hunt perceived Mr. Moore as disabled.

We agree with the district court that Mr. Moore "points to no evidence that J.B. Hunt perceived him as impaired in performing a broad range of jobs in various classes, or substantially limited regarding any other major life activity." R.42 at 5. Indeed, the record reflects that Hunt's actions were a response to specific restrictions identified by Dr. Hamilton, and were not based on myth, fear or stereotype. From the evidence Hunt had in its possession at the time of Mr. Moore's termination, the assessment of Dr. Hamilton and the NIOSH test results, Hunt "had no reason to regard [Mr. Moore] as disabled and gave no indication that it did." Harrington, 122 F.3d at 461. In light of Mr. Moore's inability to tolerate cold, damp conditions, Hunt simply determined that Mr. Moore could no longer perform the range instructor position. Because Hunt did not perceive Mr. Moore as precluded from a wide range of jobs, but only that of range instructor, Mr. Moore is not disabled for purposes of the ADA./7

Conclusion

For the foregoing reasons, we affirm the

judgment of the district court.

AFFIRMED

/1 Because the district court granted summary judgment to Hunt, we take the facts alleged by Mr. Moore to be true. See Adusumilli v. City of Chicago, 164 F.3d 353, 357 (7th Cir. 1998) (citing Burlington Indus., Inc. v. Ellerth, 524 U.S. 742 (1998)), cert. denied, 120 S. Ct. 450 (1999).

/2 Dr. Hamilton had been Mr. Moore's treating physician since 1990 and Mr. Moore had been a private patient of Dr. Hamilton's before any referral by Hunt.

/3 Independent of Hunt's concession, we believe rheumatoid arthritis falls within the definition of impairment in the regulations. The interpreting regulations define "physical impairment" as "[a]ny physiological disorder, or condition, cosmetic disfigurement, or anatomical loss affecting one or more of the following body systems: . . . musculoskeletal . . . ." 29 C.F.R. sec. 1630.2(h)(1). Because rheumatoid arthritis is a physiological condition that affects the musculoskeletal system, it clearly qualifies as an impairment.

/4 Mr. Moore submits one other argument which can be disposed of in short order. His condition, he explains, is only controlled with medication. Because the regulations require determination of a disability without ameliorative devices, he continues, his disability has to be determined without reference to his medication. The district court accepted the standard in the regulations, but held that Mr. Moore had not met his burden of establishing that his condition was worse in the absence of medication.

Since the district court ruled, and since Mr. Moore filed his brief, the Supreme Court issued its decision in Sutton v. United Airlines, Inc., 119 S. Ct. 2139 (1999), which holds: "Looking at the Act as a whole, it is apparent that if a person is taking measures to correct for, or mitigate, a physical or mental impairment, the effects of those measures--both positive and negative--must be taken into account when judging whether that person is 'substantially limited' in a major life activity and thus is 'disabled' under the Act." Id. at 2146. Consequently, Mr. Moore's argument that his condition worsens in the absence of medication is not relevant in determining whether his arthritis rises to the level of a disability.

/5 Mr. Moore admits that "the correct inquiry is whether plaintiff's arthritis precludes him from performing those classes of jobs for which he has training." Appellant's Br. at 25.

/6 Mr. Moore argues only that Hunt perceives him as disabled with respect to the major life activity of work and therefore our discussion focuses on that activity.

/7 Mr. Moore also mentions two other reasons why Hunt perceived him as disabled. First, Mr. Moore posits that because his termination occurred just prior to the time that Hunt would have to provide him with health benefits, Hunt must have terminated his employment to avoid that extra cost. According to Mr. Moore, this seems to be the "true explanation for [his] termination." Appellant's Br. at 19. Mr. Moore would like us to equate an interest in avoiding insurance costs with a perception of disability. However, he fails to cite any authority for this proposition; indeed, he fails to make any cogent argument to this effect. Consequently, the argument is waived. See Chambers v. American Trans Air, Inc., 17 F.3d 998, 1005 (7th Cir. 1994) ("[W]e will not reverse the entry of summary judgment based on skeletal snippets of argument without citation to authority.").

Second, Mr. Moore claims that Hunt's differing explanations for his termination leads to a "reasonable inference" that Hunt "perceived [him] as disabled and decided to get rid of him by any means." Appellant's Br. at 19. We believe that this inaccurately characterizes the record. Hunt has consistently cited the restrictions that arose from Mr. Moore's Department of Transportation physical as the reasons for terminating his employment. However, even if Hunt had been less than forthcoming in identifying the reason for Mr. Moore's termination, this does not assist Mr. Moore in establishing a disability, only in proving a discriminatory motive once he has established that he falls within the ADA's protection. For the reasons previously stated, he has not met this initial burden.