Vincent BIANK, Plaintiff,

v.

THE NATIONAL BOARD OF MEDICAL EXAMINERS, Defendant.

No. 99 C 3390.

United States District Court, N.D. Illinois, Eastern Division.

Oct. 16, 2000.

Robert McKenna Winter, James M. DeZelar, Chicago, IL, for Plaintiff.

Howard Michael Pearl, Joseph James Torres, Chicago, IL, for Defendant.

## OPINION AND ORDER

DARRAH, District Judge.

### PROCEDURAL HISTORY

On May 21, 1999, the plaintiff, Vincent Biank, sought interlocutory injunctive relief under the Americans with Disabilities Act (ADA) (42 U.S.C. § 12189) to require the National Board of Medical Examiners (NBME) to provide an additional day beyond the standard one-day period on June 1, 1999, for the United States Medical Licensure and Examination (USMLE) Step 1 Exam. On May 27, 1999, the Honorable Milton I. Shadur entered a Temporary Restraining Order enjoining defendant from continuing its prior refusal to accommodate the plaintiff's disability by granting him double-time on June 1–2, 1999, to take the USMLE Step 1 Exam, as further set out below. That same day, defendant filed a notice of appeal with the 7th Circuit United States Court of Appeals (7th Circuit). On May 28, 1999, the 7th Circuit stayed the May 27, 1999 Temporary Restraining Order.

■ Plaintiff now seeks final mandatory injunctive relief before this court to require defendant to provide the plaintiff an additional one day test-taking time on October 19–20, 2000, for Step 2 of the USMLE because he has dyslexia, pursuant to Sections 12112, 12183, and 12189 of the ADA (42 U.S.C. §§ 12112, 12183, and 12189). The USMLE, as a private entity offering examinations related to licensing, is subject to the ADA under Section 12189. 42 U.S.C. § 12189. Therefore, his claim will be considered pursuant to that section. Plaintiff also seeks reasonable attorney fees and costs; this issue is reserved for a later determination, as may be required.

### UNDISPUTED FACTS

Plaintiff is a fourth-year medical student at the University of Illinois Medical School in Rockford, Illinois. The NBME is a non-profit organization headquartered in Philadelphia, Pennsylvania that administers the USMLE, a three-step examination; the successful completion of each step is required for medical licensure in the United States. In order for an individual to take the USMLE, the individual must either be enrolled in medical school or a graduate of a medical school. Examinees taking the Step 2 Exam are given eight hours of testing time on a single day to complete Step 2. If an examinee fails any Step of the USMLE, they may it take it again within 60 days, up to a total of three times per year. In order to be licensed as a medical doctor in the United States, plaintiff must pass the USMLE, successfully complete a residency program, apply for a license, and establish the appropriate ethical standards. Other than the per year limit, there is no overall limit to how many times an examinee who fails can take the USMLE. As long as an individual obtains a passing grade, the actual grade an examinee receives on the USMLE has no bearing on his or her ability to be licensed to practice medicine.

On November 20, 1998, the plaintiff requested an accommodation of double-time for the USMLE Step 1 Exam for the stated reason that he has a learning disability. By a letter dated, May 17, 1999, the NBME advised plaintiff that it would not provide the recommendation he requested. As set out above, on May 21, 1999, plaintiff filed this action before the district court seeking an order setting the matter for hearing on an expedited basis prior to June 1, 1999. On May 27, 1999, the district court granted plaintiff's request for preliminary injunctive relief, directing the NBME to allow plaintiff double-time in which to take Step 1 on June 1–2. On Friday, May 28, 1999, the 7th Circuit granted NBME's motion to stay the district court's order. Thereafter, plaintiff voluntarily took Step 1 on June 8, 1999, without the accommodation of one additional day and received a passing score of 192. The minimum passing score for Step 1 was 179.

On March 28, 2000, plaintiff completed and signed his Step 2 application, selecting the testing period from September 1, 2000 to November 30, 2000. In connection with his Step 2 application, plaintiff also requested an accommodation of double-time that would allow him to take Step 2 on two days or one day more than otherwise provided. By letter dated June 27, 2000, the NBME advised plaintiff that upon review of plaintiff's application it could not provide the requested accommodation.

This matter now comes before the Court following a bench trial. The Court has considered the evidence, including the testimony of witnesses and exhibits, and has further considered the written arguments of counsel for the parties and the authority cited therein.

## CONCLUSIONS OF LAW

The court has federal question jurisdiction over the plaintiff's claim (28 U.S.C. § 1331) and venue is proper pursuant to 28 U.S.C. § 1391(b) and (c). The NBME is subject to the ADA under 42 U.S.C. § 12189.

The purpose of the ADA is, in part, to provide "a clear and comprehensive national mandate for the elimination of discrimination * * and to provide clear, strong, consistent, enforceable standards addressing discrimination * * *." 42 U.S.C. § 12101(b)(1) and (2). 42 U.S.C. § 12189 prohibits an entity covered by the ADA from discriminating against a person with a disability by refusing reasonable accommodations for the disability.

The ADA defines "disability" as:

"a) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; b) a record of such an impairment; or c) being regarded as having such an impairment." 42 U.S.C. § 12102(2).

The ADA authorizes the Equal Employment Opportunity Commission (EEOC) to issue regulations to carry out Subchapter I of the ADA (42 U.S.C. § 12116) and the Attorney General (Department of Justice or DOJ) to issue regulations to carry out

the provisions of Subchapter III of the ADA (42 U.S.C. § 12186(b)). Courts have referred to regulations by both the EEOC and DOJ in construing the term "disability" as found in Section 12102. See e.g., Moore v. J.B. Hunt Transport, Inc., 221 F.3d 944, 953–54 (7th Cir.2000); Bartlett v. New York State Board of Law Examiners, 226 F.3d 69 (2nd Cir.2000); Gonzales v. National Board of Medical Examiners, 225 F.3d 620 (6th Cir.2000).

■ The determination of whether a person has a disability under the ADA is made on an individualized case-by-case basis. Byrne v. Board of Educ., 979 F.2d 560, 565 (7th Cir.1992). This determination is made through a three-step process: (1) whether the individual suffers from a "physical or mental impairment"; (2) whether the life activity on which the individual relies upon is a "major life" activity; and (3) whether the impairment "substantially limits" that major life activity. See Bragdon v. Abbott, 524 U.S. 624, 631, 118 S.Ct. 2196, 141 L.Ed.2d 540 (1998).

The DOJ defines the phrase "physical or mental impairment" as "[a]ny mental or psychological disorder such as mental retardation, organic brain syndrome, emotional or mental illness, and specific learning disabilities." 28 C.F.R. § 35.104 (1999). Major life activities include caring for one's self, walking, speaking, learning, and working. This list is illustrative, not exhaustive. Bragdon, 524 U.S. at 638–39, 118 S.Ct. 2196, 141 L.Ed.2d 540; 28 C.F.R. § 36.104(2) (1999).

The term "substantially limits" has been interpreted by both the EEOC and DOJ. The DOJ regulations do not define "substantially limits"; however, the Preamble to the DOJ's regulation states that "[a] person is considered an individual with a disability * * * when the individual's important life activities are restricted as to the conditions, manner, or duration under which they can be performed in comparison to most people." 28 C.F.R. 36, App. B. The Sixth Circuit, in Gonzales, found a medical student's reading disability did not

substantially limit his abilities when compared to most people. The court adopted the DOJ's interpretation of "substantially limits" and rejected application of the definition found in the EEOC regulations because the DOJ was given the authority to implement regulations of Subchapter III of the ADA, pursuant to which the action was heard, and not the EEOC. *Gonzales,* 225 F.3d at ——.

The EEOC defines "substantially limits" for major life activities other than working as: "[s]ignificantly restricted to the condition, manner, or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity." 29 C.F.R. 1630.2(j)(1)(ii) (1999).

For the major life activity of working, the term means: "significantly restricted in the ability to perform a class of jobs or a broad range of jobs in various classes as compared to *the average person having comparable training, skills and abilities.*" 29 C.F.R. 1630.2(j)(3)(i) (1999) (emphasis added).

In *Bartlett,* the Second Circuit adopted the definition of "substantially limits" as used for the major life activity of working from the EEOC regulation into an action brought under Subchapter III. The *Bartlett* court found that while the DOJ's Preamble discussed "substantially limits" in terms of "most people," the regulation was ambiguous because it failed to explain whether most people referred to most people in the general population or most people engaging in a particular activity. Based on this and the need for the terms in the ADA to be consistent, the court used the EEOC definition of "substantially limits" with respect to working. *Bartlett,* 226 F.3d at ——. In addition, the court noted that the DOJ's amicus curiae argued that the EEOC regulations defining "substantially limits" with respect to working was not inconsistent with the DOJ's regulations and advocated application of the EEOC definition.

■ This court agrees with the reasoning of the Second Circuit in *Bartlett* in which the court concluded the interpretation of the term "substantially limits" by the EEOC with respect to the major life activity of working should be used to evaluate a claim under Subchapter III of the ADA as the appropriate standard to measure this plaintiff's complaint in that regard. As support for concluding that interpretation reflects the intended statutory construction, the *Bartlett* court noted: (1) the DOJ does not explicitly define the term; whereas, the EEOC does; (2) the explanation in the Preamble is ambiguous; (3) consistency is needed throughout the ADA; (4) the EEOC has been delegated authority to implement Subchapter I of the ADA; and (5) the DOJ agreed with the finding as demonstrated by its argument in its amicus curiae. Further support is found within the ADA's purpose statement, which states that one of the ADA's purposes is to provide "consistent * * * standards addressing discrimination against individuals with disabilities." 42 U.S.C. § 12101. *Bartlett* presents a factual basis similar to the case at bar. However, one significant distinction should be noted: the plaintiff in *Bartlett* took and failed the Bar Examination three times and was then fired from the law firm she had worked at since graduating from law school. *Bartlett v. New York State Board of Law Examiners,* 970 F.Supp. 1094, 1101–1103 (S.D.N.Y.1997). Unlike plaintiff in the instant case, as discussed in the Findings of Fact below, the *Bartlett* plaintiff's failure to pass the Bar Examination and her termination from employment clearly demonstrated she was unable to engage in the major life activity of "working" with the accommodation sought pursuant to the ADA.

■ 42 U.S.C. §§ 12117, 12188, and 2000a–3 make injunctive relief available to a disabled person to enforce the provisions of the ADA. A court considers four criteria in deciding whether to grant injunctive relief, including whether: (1) the plaintiff

has a reasonable likelihood of success on the merits; (2) the plaintiff will have an adequate remedy at law or will be irreparably harmed if the injunction is not granted; (3) the threatened injury to the plaintiff outweighs the threatened harm the injunction may inflict on defendant; and (4) the granting of the injunction will harm the public interest. *Plummer v. American Institute of Certified Public Accountants,* 97 F.3d 220, 229 (7th Cir.1996). A permanent injunction is not provisional in nature as is a temporary injunction; rather, a permanent injunction is a final judgment. As such, a plaintiff seeking a permanent injunction must demonstrate not whether he has a reasonable likelihood of success on the merits but whether he has in fact succeeded on the merits. *Plummer,* 97 F.3d at 229.

### FINDINGS OF FACT

 1. Plaintiff is a fourth-year medical student with dyslexia, a physical or mental impairment.

2. Plaintiff is required to take Step 2 of the USMLE, which is a major life activity of working as a duly licensed medical doctor.

3. Plaintiff has not previously taken the Step 2 Exam and failed to pass; plaintiff has taken and passed the Step 1 Exam without an accommodation of additional time. Both the Step 1 and Step 2 Exams must each be taken in one 8–hour day.

4. Plaintiff has failed to prove that his impairment will substantially limit a major life activity without the requested accommodation either because:

a. plaintiff has failed to prove that his impairment of dyslexia will significantly limit his ability to pass Step 2 of the USMLE without the requested accommodation as compared with an average person in the fourth year of medical school; or

b. plaintiff has failed to prove that obtaining a low but passing score would significantly limit his participation in a medical residency program of his choice. The evidence supports a contrary finding that any passing score would be of no effect regarding residency in the speciality in which plaintiff is interested.

5. Plaintiff, therefore, has failed to prove that he will be irreparably harmed if an injunction mandating an accommodation is not granted.

IT IS THEREFORE ORDERED that plaintiff's, VINCENT BIANK'S, complaint for a permanent mandatory injunction against NATIONAL BOARD OF MEDICAL EXAMINERS is hereby denied.