Scott **FELTEN**, Plaintiff,

v.

**EYEMART EXPRESS, INC.,** Defendant.

No. 01–C–557.

United States District Court, E.D. Wisconsin.

Jan. 23, 2003.

Cynthia L. Manlove, Hall Charne Burce & Olson, Milwaukee, WI, for Plaintiff.

Heather M. Tiltmann, James W. Greer, Jr., William E. Hughes, III, Whyte Hirschboeck Dudek, Milwaukee, WI, for Defendant.

## DECISION AND ORDER

GRIESBACH, District Judge.

Plaintiff Scott Felten has sued his former employer, defendant Eyemart Express, Inc., for violations of the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12101–12117. He alleges that Eyemart failed to accommodate his adult attention deficit disorder (ADD) and improperly fired him from his position as general manager of one of Eyemart's stores because of his ADD. Eyemart has moved for summary judgment, arguing that Felten's ADD is not a disability as that term is defined by the ADA and that, in any event, it fired Felten for legitimate reasons unrelated to his ADD.

To be considered a disability under the ADA, an impairment must substantially limit a major life activity. Because there is no evidence that Felten's ADD limits any major life activity in a substantial way, I conclude that Felten is not disabled within the meaning of the ADA and that summary judgment should be granted in Eyemart's favor.

### I. UNDISPUTED FACTS [1]

■ Eyemart is a retailer of optical services and supplies, with a principal place of

---

1. Eyemart contends that a number of Felten's objections to its proposed findings of fact and

business in Carrollton, Texas, and several stores across Wisconsin. Felten resides in Appleton, Wisconsin, and began working for Eyemart on May 1, 1990. Felten was general manager of Eyemart's Appleton store, with overall responsibility for all functions of the store, including human resources and operations. At some point during his employment with Eyemart, Felten became the regional manager for the other Eyemart stores in Wisconsin—in La-Crosse, Green Bay, and Eau Claire. He was removed as regional manager sometime prior to September 12, 1996, but continued after that time as manager of the Appleton store.

Felten was diagnosed with ADD on September 12, 1996. His symptoms consisted of some disorganization, forgetfulness, periodic stumbling, jumping from project to project, and being easily distracted. In addition, he had problems with communications, impulsiveness, multi-tasking, and memory. Even though Felten would occasionally jump from one project to another, he would generally return to the incomplete projects and complete them. Felten had no physical limitations as a result of the ADD.

Felten's psychiatrist did not indicate to him that he would have any difficulty doing his job as general manager as a result of having ADD. (Felten Dep. at 152.) In a letter of May 23, 2000, however, Felten's psychiatrist has indicated that Felten's combination and complexity of neurological disorders (ADD plus Tourette Syndrome, obsessive compulsive disorder and depression) at times has made it "difficult ... for [Felten] to maintain the effectiveness his job required." (Manlove Aff. Ex. N at 2.)

Other than difficulties with organization, Felten's ADD did not impair his ability to perform his job as general manager, keep him from performing any of the functions associated with his position as general manager, or make it more difficult for him to do his job (Felten Dep. at 49–50, 151; Felten Aff. at. ¶ 14) However, when Eyemart criticized him, for having a disorganized store, he was unable to conform to Eyemart's requests (Felten Aff. ¶ 11). The medication prescribed by his psychiatrist helped him with his symptoms (Felten Dep. at 151), but even with medication, the stress from work increased the problems that were occurring because of the ADD (Sharon Felten Aff. ¶¶ 14–15).

According to Felten, Eyemart's discrimination against him began shortly after he was diagnosed with ADD. Mary Jo Samuelson, Eyemart's senior vice president, learned about the diagnosis when Felten asked her for assistance in getting approval for insurance to cover the medication. He states that Samuelson and Eyemart owner Doug Barnes may have said something to him about ADD, but he cannot recall what they said or when they said it. Felten thinks Samuelson may have asked what ADD was. In a phone conversation between Barnes and Felten, Barnes expressed his belief that he himself had the symptoms or at least some of them.

Felten remained employed with Eyemart as general manager of the Appleton store for almost three years after being diagnosed with ADD. On August 16, 1999, his employment was terminated following several negative reports concerning his job

---

several of his additional proposed findings of fact are based upon affidavits submitted by Felten and his wife which conflict with his earlier deposition testimony. Although affidavits may clarify or augment deposition testimony, contradictions are to be disregarded unless a plausible explanation is offered. *Beckel v. Wal–Mart Assocs., Inc.*, 301 F.3d 621, 623 (7th Cir.2002). I have found no inconsistencies that are material to my determination of the motion before me.

performance. Felten disputes Eyemart's claim that his discharge was due to poor job performance and points to evidence of superior performance by the Appleton store in comparison with Eyemart's other stores as evidence that its claim is a mere pretext for the actual reason he was fired.

Within a few months after the termination of his employment with Eyemart, Felten worked as a manager of the produce section of a grocery store. He later began employment with Target Optical in Appleton. At Target Optical, Felten held the position of "Optical Team Lead," which involved management responsibility for the optical department at the Target store in Appleton.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The moving party has the initial burden of demonstrating that it is entitled to summary judgment. *Id.* at 323, 106 S.Ct. 2548. Once this burden is met, the nonmoving party must designate specific facts to support or defend each element of the cause of action, showing that there is a genuine issue for trial. *Id.* at 322–24, 106 S.Ct. 2548.

In analyzing whether a question of fact exists, the court construes the evidence in the light most favorable to the party opposing the motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The mere existence of some factual dispute does not defeat a summary judgment motion, how-

ever; there must be a ·*genuine* issue of *material* fact for the case to survive. *Id.* at 247–48, 106 S.Ct. 2505.

"Material" means that the factual dispute must be outcome-determinative under governing law. *Contreras v. City of Chicago*, 119 F.3d 1286, 1291 (7th Cir.1997). Failure to support any essential element of a claim renders all other facts immaterial. *Celotex*, 477 U.S. at 323, 106 S.Ct. 2548. Therefore, summary judgment is appropriate against a party who, after adequate time for discovery and in the face of a properly supported summary judgment motion, fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Id.* at 322, 106 S.Ct. 2548.

Whether a material issue of fact is "genuine" necessarily requires some qualitative determination of sufficiency of the evidence. To defeat a properly supported motion for summary judgment, the opposing party must present specific and sufficient evidence that, if believed by a jury, would actually support a verdict in its favor. Fed.R.Civ.P. 56(e); *Anderson*, 477 U.S. at 249, 106 S.Ct. 2505. A "metaphysical doubt as to the material facts" is insufficient to defeat a motion for summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Regensburger v. China Adoption Consultants, Ltd.*, 138 F.3d 1201, 1205 (7th Cir.1998). Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. *Matsushita*, 475 U.S. at 587, 106 S.Ct. 1348. "A district judge faced with [a summary judgment] motion must decide . . . whether the state of the evidence is such that, if the case were tried tomorrow, the plaintiff would have a fair chance of obtaining a verdict. If not, the

motion should be granted and the case dismissed." *Palucki v. Sears, Roebuck & Co.,* 879 F.2d 1568, 1572–73 (7th Cir.1989) (citations omitted).

## III. DISCUSSION

In his complaint, Felten asserts both that he was discriminated against because of his ADD disability and that Eyemart failed to reasonably accommodate his disability.

The ADA prohibits an employer's "discriminat[ion] against a qualified individual with a disability because of the disability" regarding "discharge ... and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). "Discrimination" includes "disparate treatment" of an employee, meaning that because of the disability the employee is treated differently than those who are not so disabled. *See Bultemeyer v. Fort Wayne Cmty. Schs.,* 100 F.3d 1281, 1283 (7th Cir.1996). It also includes the failure to "mak[e] reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an ... employee," unless accommodations would impose undue hardship, 42 U.S.C. § 12112(b)(5)(A); 100 F.3d at 1283.

Eyemart argues alternatively in its summary judgment brief that (1) Felten had no disability, and (2) even if he did, there is no evidence that Eyemart discriminated against him. In support of its second argument, Eyemart argues under the burden-shifting test of *McDonnell Douglas*

Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), that the undisputed facts establish that it terminated him for legitimate reasons. Because I conclude that Eyemart's first argument, that Felten is not disabled, is dispositive, I do not reach the second and therefore do not decide whether his termination was justified for other nondiscriminatory reasons.

For purposes of the ADA, a "disability" is defined as (1) "a physical or mental impairment that substantially limits one or more of the major life activities" of a person, (2) "a record of such an impairment," or (3) "being regarded as having such an impairment." 42 U.S.C. § 12102(2). Felten contends that he satisfies either (1) or (3). I will address each in turn.

### A. Impairment that Substantially Limits a Major Life Activity?

For purposes of the present motion, the parties and I assume that ADD is either a physical or mental impairment. *See Davidson v. Midelfort Clinic, Ltd.,* 133 F.3d 499, 506 (7th Cir.1998). But "[m]erely having an impairment does not make one disabled for purposes of the ADA." *Toyota Motor Mfg., Kentucky, Inc. v. Williams,* 534 U.S. 184, 194–95, 122 S.Ct. 681, 690, 151 L.Ed.2d 615 (2002). A person claiming to be disabled must in addition show both (1) that the impairment affects and limits a major life activity, and (2) that the limitation is substantial. 42 U.S.C. § 12102(2); 122 S.Ct. at 690; *Moore v. J.B. Hunt Transp., Inc.,* 221 F.3d 944, 950–51 (7th Cir.2000).[2]

**2.** Felten points to *Davidson* and two other cases as support for a finding that ADD is a recognized "disability." *Davidson* merely indicates that ADD qualifies as an *impairment* under the ADA, not a *disability*, the latter of which requires proof that a major life activity is substantially limited. *See Davidson,* 133 F.3d at 506. Felten's other two cases, *Hopkins v. Electronic Data Systems Corp.,* 196

F.3d 655 (6th Cir.1999), and *Kaltenberger v. Ohio College of Podiatric Medicine,* 162 F.3d 432 (6th Cir.1998), are of no help, as the defendants there conceded for purposes of those cases that having ADD qualified the plaintiffs as disabled, *see* 196 F.3d at 661 n. 2, 162 F.3d at 435 n. 3. The Sixth Circuit thus never addressed the subject of ADD as a "dis-

Major life activities are the "basic functions of life," *Davidson*, 133 F.3d at 505, and include "caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working," 29 C.F.R. § 1630.2(i); 45 C.F.R. § 84.3(j)(2)(ii); *Dvorak v. Mostardi Platt Assocs., Inc.*, 289 F.3d 479, 483 (7th Cir. 2002).[3] While this list is illustrative rather than exhaustive, *Bragdon v. Abbott*, 524 U.S. 624, 638–39, 118 S.Ct. 2196, 141 L.Ed.2d 540 (1998), the Supreme Court has noted that the term " 'major' in the phrase 'major life activities' means important." *Toyota*, 122 S.Ct. at 691. " 'Major life activities' thus refers to those activities that are of central importance to daily life." *Id.* at 691.

EEOC regulations define "substantially limits" as "[u]nable to perform a major life activity that the average person in the general population can perform" or "[s]ignificantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity." 29 C.F.R. § 1630.2(j)(i); 122 S.Ct. at 691. The factors to be considered are the nature and severity of the impairment, its duration or expected duration, and its permanent or long-term impact. 29 C.F.R. § 1630.2(j)(2); 122 S.Ct. at 691.

According to *Toyota Motor Manufacturing, Kentucky, Inc. v. Williams*, the Su-

preme Court's most recent decision construing this section of the ADA, the word "substantially" "in the phrase 'substantially limits' suggests 'considerable' or 'to a large degree.' The word 'substantial' thus clearly precludes impairments that interfere in only a minor way with the performance of manual tasks from qualifying as disabilities." 122 S.Ct. at 691. "Major" and "substantial" are "interpreted strictly to create a demanding standard for qualifying as disabled," as Congress in describing its purpose in passing the ADA likely did not contemplate that anyone with an impairment that precluded the performance of merely isolated, unimportant tasks would be considered disabled. *Id.*

Although *Toyota* addressed only the major life activity of performing manual tasks and not other "major life activities," its definitions of "major" and "substantial" apply generally to other major life activities as well. *Dvorak*, 289 F.3d at 483–84. Thus, under the test adopted by the Supreme Court in *Toyota*,

> to be substantially limited in performing manual tasks [or other major life activity], an individual must have an impairment that prevents or severely restricts the individual from doing activities that are of central importance to most people's daily lives. The impairment's impact must also be permanent or long term.
>
> It is insufficient for individuals attempting to prove disability status under this test to merely submit evidence of a

---

ability," as the subject was not raised on appeal.

**3.** According to the Supreme Court, the regulations interpreting the Rehabilitation Act, *e.g.* 45 C.F.R. § 84.3, are to be considered when interpreting the definitions in the ADA, pursuant to an express reference to those regulations by Congress when enacting the ADA. *Toyota*, 122 S.Ct. at 689; *see* 42 U.S.C.

§ 12201(a). The EEOC regulations regarding the defined terms in the ADA, *e.g.*, 29 C.F.R. § 1630.2, are generally presumed to be persuasive as well, *see Dvorak*, 289 F.3d at 483, although the Supreme Court has reserved the question of their persuasiveness, *see* 122 S.Ct. at 689; *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 479–80, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999).

medical diagnosis of an impairment. Instead, the ADA requires ... "evidence that the extent of the limitation [caused by their impairment] in terms of their own experience ... is substantial."

122 S.Ct. at 691 (quoting *Albertson's, Inc. v. Kirkingburg,* 527 U.S. 555, 567, 119 S.Ct. 2162, 144 L.Ed.2d 518 (1999)) (second alteration in original).

The Court in *Toyota* found that the plaintiff before it was not disabled by her carpal tunnel syndrome, which limited the use of her hands and arms at shoulder level for extended periods of time, as the syndrome did not impact her ability to complete manual tasks like personal hygiene, household chores, and the requirements of her previous job, which had not required such use of her hands and arms. 122 S.Ct. at 687, 693–94. She had shown only that she had to limit some activities like sweeping and dancing and was unable to complete manual tasks related to new job duties. However, the Court noted, "the manual tasks unique to any particular job are not necessarily important parts of most people's lives." *Id.* at 693.

For the major life activity of working, an additional requirement exists. For working, "substantially limits" requires that a person be significantly restricted in performing either a class of jobs or a broad range of jobs in various classes. 29 C.F.R. § 1630.2(j)(3)(i); *Toyota,* 122 S.Ct. at 692–93; *Sutton v. United Air Lines, Inc.,* 527 U.S. 471, 491, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999). Factors to consider include the number and type of jobs from which a person is disqualified, the geographical area to which the person has reasonable access, and the person's training and job expectations. *Moore,* 221 F.3d at 953; *see also* 29 C.F.R. § 1630.2(j)(3)(ii).

The inability to perform one particular job is not a substantial limitation of the major life activity of working. 29 C.F.R. § 1630.2(j)(3)(i). To be considered substantially limited, a person "must be precluded from more than one type of job, a specialized job, or a particular job of choice." *Sutton,* 527 U.S. at 492, 119 S.Ct. 2139. In *Sutton,* for instance, the disqualification of the plaintiffs from the single job of global airline pilot did not mean they were substantially limited in the major life activity of working. *Id.* at 492–93, 119 S.Ct. 2139.

Whether a person is disabled is determined case by case. *Toyota,* 122 S.Ct. at 692. Individual assessment is "particularly necessary when the impairment is one whose symptoms vary widely from person to person." *Id.; see also* 29 C.F.R. pt. 1630, App. § 1630.2(j) ("The determination of whether an individual has a disability is not necessarily based on the name or diagnosis of the impairment the person has, but rather on the effect of that impairment on the life of the individual.").

Finally, in determining whether a person is disabled, measures that mitigate the person's impairment must be considered. *Sutton,* 527 U.S. at 475, 482, 119 S.Ct. 2139. A person whose impairment "is corrected by medication or other measures" still has an impairment, but the corrected impairment cannot "substantially limit[ ]" a major life activity. *Id.* at 482–83, 119 S.Ct. 2139.

■ Turning now to the facts before me in this case, I first note that Felten has failed to specify any particular major life activity affected by his ADD—he simply says that "his ADD affects his daily living in many respects" (Pl's Br. in Opp'n at 4; *see also id.* at 10 (stating that "his condition affected his daily living activities")) and that "[c]learly, the plaintiff's ability to function in his day to day life, at home as well as at work, was impaired in 1999 by his ADD" ( *id.* at 7). However, he pres-

ents no evidence or argument regarding the specific major life activities in which he can no longer participate. Felten's examples of the effects of his ADD—leaving the hose on, forgetting to pick up his children from school, for example—are not themselves major life activities. And he fails to present any evidence showing that intermittent difficulties with memory, decision-making, impulsiveness, and forgetfulness impact a particular major life activity or are themselves major life activities, i.e., basic, central functions of life. *Cf., e.g., Pack v. Kmart Corp.,* 166 F.3d 1300, 1305–06 (10th Cir.1999) (holding that concentration is not a major life activity). While these activities may be components of some major life activity, Felten never identifies what that major life activity might be. He therefore fails to establish one of the elements required for finding an actual disability under the ADA.

Moreover, even if I analyze various possible major life activities Felten might argue, he fails to establish any genuine issue of material fact regarding a *substantial* limitation. Felten in fact discusses an incorrect legal standard on the matter. He does not discuss *Toyota* (even though cited by Eyemart in its opening brief) or its definition of "substantially limits." Instead, he argues that all he needs to show to get to a jury is that his ADD impairment "affects his daily living." (*Id.* at 5; *see also id.* at 6 ("The ADA requires ... that the impairment affect a major life activity.").) However, that is not the test.

■ And with respect to the major life activity of working, he fails to provide any evidence whatsoever regarding an inability to perform a class or broad range of jobs. Felten fails, for instance, to provide any evidence regarding the number and types of jobs for which he is disqualified or the geographical limits on available jobs. He fails to establish that other employers would all find the same faults in his capabilities as Eyemart did, thus foreclosing any job in management or in the retail optical field. In fact, the evidence in the record actually indicates that Felten is *not* barred from a broad class of jobs—he is not even barred from the class consisting of optical-related management jobs. After being fired by Eyemart Felten found another job managing the optical department at a Target store. This fact is strong evidence that the same class or broad range of jobs is still open to Felten. *See Moore,* 221 F.3d at 953 (indicating that a doctor's restrictions did not significantly restrict employment, as Moore had found work as a charter bus driver after being fired as a truck driver training instructor).

Felten's evidence is even insufficient for a rational jury to find that he was substantially limited in his job at Eyemart. For over two years after his diagnosis, Felten functioned as general manager, earning one of the highest bonuses of any of Eyemart's general managers. Felten himself admitted that although his ADD caused him to jump from project to project, he would eventually get back to each project and finish it. He testified at his deposition that his ADD did not impair his ability to perform his job as general manager or keep him from performing any of the functions associated with that position or even make it more difficult for him to do his job, except that when Eyemart criticized him for having a disorganized store, he was unable to conform to Eyemart's requests. His psychiatrist did not indicate to him that he would have any difficulty doing his job as general manager of the Appleton store as a result of having ADD. The letter from the psychiatrist written about nine months *after* Felten was fired suggests only that his combination of physical or mental problems may at times have made it more difficult to do his job. The letter

says nothing about ADD itself, nor that the increased difficulty equates with anything considered to be substantial limitation. In his brief opposing summary judgment Felten indicates that he continues to believe that he was capable of performing his job as general manager. (Pl.'s Br. in Opp'n at 6.) On the evidence in the record, no rational jury could find that Felten's inability to reorganize the store after criticism substantially limited his work at Eyemart, let alone the major life activity of working in general.

Finally, Felten admitted at his deposition that the medication prescribed by his psychiatrist helped him with his symptoms. While stress from work may have increased the problems that were occurring because of the ADD, Felten provides no evidence that such problems were not temporary and could not be ameliorated with the right medication. As Felten admits, the medication made his impairment even less severe.

In regard to other possible major life activities such as caring for oneself, walking, and learning, Felten similarly fails to present any evidence of a significant restriction as compared to the average person in the general population—he fails to present evidence of any "considerable," large, or significant limitations. As stated above, "substantial" precludes impairments that interfere in only a minor way with the performance of a major life activity. *Toyota*, 122 S.Ct. at 691.

Felten says he stumbles periodically, but wisely does not argue that such stumbling substantially impairs his ability to walk. In *Moore*, a man with rheumatoid arthritis, which causes joints to swell and stiffen, was found not to be substantially limited regarding walking, as his condition did not generally prevent him from walking up to a mile and mainly slowed him down compared to other people. 221 F.3d at 948,

951. Stumbling once in a while is little to no worse than being slowed as compared to the general population.

In regard to caring for oneself (or even for family) and learning, Felten's symptoms consisted of disorganization, forgetfulness, jumping from project to project, being easily distracted, communications problems, impulsiveness, multi-tasking problems, and bad memory. He provides absolutely no evidence, however, of how these symptoms so exceeded the experience of the general population such that a jury could find them substantially limiting. Memory lapses, impulsiveness, and poor decision-making are commonplace for the average person; if they constituted disabilities, the ADA would have to be interpreted broadly, not strictly as the Supreme Court now requires.

While I do not suggest that the symptoms set forth in Felten's wife's affidavit are not troubling for Felten and his family, such things as forgetting to turn off outside faucets or to pick up children from school, driving the car with one knee, impulsively purchasing siding for his home or barging into his children's bedrooms, coming home from the grocery store with the wrong items, or maintaining piles of paper cannot rationally be considered so outside the realm of the general population or such a significant or large limitation under the *Toyota* standard such that Felten can be considered disabled. Regardless of its permanency, no rational jury could find that the nature and severity of his ailments are so significant or so very different from the general population as to be substantially limiting.

That Felten is not disabled is confirmed by comparing his condition to that of the plaintiff in *Davidson v. Midelfort Clinic, Ltd.* In that case, the plaintiff claimed that her ADD substantially limited her ability to work, speak, and learn. She had been

fired from a therapist job that required that reports be dictated quickly; Davidson's ADD required that she hand-write her reports in order to organize her thoughts, as she could not dictate in an organized way, thus making her reports tardy. The Seventh Circuit found that at most the evidence showed that Davidson's ADD prevented her from doing one aspect of the single job from which she had been fired, as she had presented no evidence that other therapist jobs required such dictation or that most jobs within the class of therapist jobs were even problematic. *See* 133 F.3d at 506–07. She similarly failed to establish that dictation was a skill needed in most people's everyday lives, such that speech was substantially limited. *See id.* at 507–08. And finally, although Davidson had presented proof of a history of difficulties in learning at school, that difficulty was in the past. In affirming that part of the lower court's decision granting summary judgment on the issue of whether Davidson had at that time "a physical or mental impairment that substantially limits one or more major life activities," the court found this evidence insufficient to warrant a trial.

In this case, the evidence of a substantially limiting impairment is far less than was before the court in *Davidson*. For this reason, I conclude that Felten has failed to establish that he has a disability as defined by 42 U.S.C. § 12102(2)(A).

## B. Regarded as Having a Substantially Limiting Impairment?

■ A person is also considered disabled if he falls within the category of those "regarded as having" a "physical or mental impairment that substantially limits one or more of the major life activities of such individual." 42 U.S.C. § 12102(2)(C); *Moore*, 221 F.3d at 953. To meet this definition, an ADA plaintiff must show that (1) the employer believes that the person has an impairment that substantially limits a major life activity but the person does not have such an impairment, or (2) the employer believes that an impairment the person does have is substantially limiting for a major life activity when in fact it is not so limiting. *Sutton*, 527 U.S. at 489, 119 S.Ct. 2139. Thus, the definitions of "substantially limits" and "major life activity" still apply. A plaintiff must show more than that the employer was aware of the impairment. He must show that the employer knew of the impairment and believed that he was substantially limited in a major life activity because of it. *Moore*, 221 F.3d at 954. Regarding the major life activity of working, again the inability to satisfy the expectations of the one employer are not enough; the employer must believe that the plaintiff is precluded from a class or broad range of jobs. *Id.*

Felten provides no evidence at all that Eyemart thought Felten unable to perform a class or range of jobs. At most, the evidence shows that Eyemart knew about Felten's ADD and terminated him from his one job as general manager of the Appleton store. Even if Eyemart thought Felten's ADD prevented him from performing the single job of general manager, that is not enough. Nothing indicates that Eyemart believed Felten was substantially limited regarding other jobs. *See id.* at 955 ("Because Hunt did not perceive Mr. Moore as precluded from a wide range of jobs, but only that of range instructor, Mr. Moore is not disabled for purposes of the ADA.").

Felten provides no evidence that Eyemart believed him substantially limited in any other major life activity, either. Felten has provided no evidence at all regarding Eyemart's perceptions of Felten's ability to walk, learn, or care for himself or

family. Felten simply questions whether Eyemart has been truthful regarding the reason for firing him. But the truthfulness of Eyemart's reasons "does not assist [Felten] in establishing a disability, only in proving a discriminatory motive once he has established that he falls within the ADA's protection." *Id.* at 955 n. 2. *Moore* explicitly rejected the notion that a perception of disability could be assumed from the termination itself. *Id.* at 954; *see also Davidson*, 133 F.3d at 510–11. Thus, Felten fails to establish any genuine issue of material fact on the question of whether Eyemart regarded him as being disabled.

## IV. CONCLUSION

Felten obviously disagrees with Eyemart's decision to terminate him. He focuses his opposition to the summary judgment motion on whether Eyemart's placement of importance on organization, quality, and morale was correct in light of the Appleton store's continued sales and profitability. But whether Eyemart's decision to fire Felten was a good business decision is not the issue. I must look at whether Felten has presented enough evidence to establish a jury question as to whether he is disabled as required by the ADA.

Because Felten fails to establish any genuine issue of material fact regarding whether he is disabled under the ADA, and the undisputed facts show that he is *not* so disabled, IT IS ORDERED that Eyemart's motion for summary judgment is granted and this case is dismissed. The clerk of court shall enter judgment accordingly. The final pretrial conference and trial dates in this case are canceled.