**Kimberly WATSON, Plaintiff**

v.

**HUGHSTON SPORTS MEDICINE HOSPITAL, Defendant**

**No. 4:00–CV–229–3 CDL.**

United States District Court, M.D. Georgia, Columbus Division.

Nov. 6, 2002.

Maxine Hardy, Columbus, GA, for Plaintiff.

John L. Monroe, Jr., F. Valerie Rusk, Atlanta, GA, for Defendant.

## ORDER

LAND, District Judge.

The Court presently has pending before it Defendant's Motion for Summary Judgment. For the reasons set forth below, the motion is granted.

## INTRODUCTION

This case arises from Hughston Sports Medicine Hospital's ("Hughston") refusal to hire Plaintiff, Kimberly Watson ("Watson"), as a part-time nurse upon learning of her allergy to latex. After considering the numerous latex products to which Watson would be exposed at its hospital, Hughston concluded that the severity of Watson's allergy presented a substantial risk to Watson and her patients. Therefore, Hughston refused to hire her. Believing that she was being discriminated against because of her allergy to latex (which she contends is a "disability"), Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") and subsequently sued Hughston, claiming that Hughston violated the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101–213. Hughston readily admits that it did not hire Watson because of her allergy to latex. Hughston argues, however, that Plaintiff's allergy does not constitute a "disability" for purposes of the ADA and that they acted reasonably and lawfully

when they refused to hire her because of their concerns about the effect of her allergy on herself and her patients.

## FACTUAL BACKGROUND

Watson, a registered nurse, applied for a position as a PRN (as needed) nurse at Hughston on March 10, 2000. At the time she applied to work part-time at Hughston, Watson worked full-time as an admissions nurse with Home Care of St. Francis. Hughston's Risk Manager and Employee Health Nurse, Elaine Sheets, and Hughston's Director of Human Resources, Del Leftwich, were aware that Watson was employed as a nurse at St. Francis when she applied for the PRN job at Hughston. Watson interviewed for the PRN position with Leftwich and Hughston's Nursing Supervisor, Debra Jackson. Leftwich made Watson a conditional offer of employment as a PRN nurse.[1] One of the conditions on the offer was that Watson satisfactorily complete a standard pre-employment physical examination. Moreover, as part of their pre-employment paper work, prospective employees like Watson are required to complete a latex sensitivity screening tool questionnaire.

Hughston is a surgical hospital and uses numerous products containing latex materials. The hospital cannot be rendered latex-free without a significant expenditure of time and money. Indeed, it would be nearly impossible to remove all items containing latex from the hospital's environment because all such items cannot be readily identified. Among the items containing latex used at Hughston are powdered latex gloves, used by some of the hospital's employees. The powder in these gloves can carry latex proteins through the air and result in unintentional and unknowing latex exposure.

Individuals who are frequently exposed to latex, including health care workers, may develop an allergy or sensitivity to latex. The effects of this condition are generally cumulative, meaning that continued exposure can worsen the severity of an individual's reactions to the substance. Reactions to latex can include contact dermatitis, hives and swelling, asthma, and, in extreme cases, anaphylactic shock. It is well recognized that individuals who have a latex allergy should avoid exposure to latex products.

Based upon these concerns, Hughston conditions its offers of employment on the potential employee being screened for latex sensitivity. The screening process starts with a questionnaire. The questionnaire lists numerous products containing latex and asks employees whether they have suffered any type of reaction as a result of exposure to those products. Individuals who indicate that they have had reactions to three or more items containing latex are then asked to undergo a blood test to determine whether the individual is indeed allergic to latex. According to Hughston's guidelines for the care of employees with latex sensitivities or allergies, new employees who indicate on the questionnaire that they have had reactions to latex should also be referred to their personal physician for a follow-up evaluation.

Watson completed Hughston's latex sensitivity screening tool questionnaire on March 27, 2000, in conjunction with her pre-employment paperwork. On the questionnaire, Watson indicated that she had

---

1. As a PRN nurse, Watson would be guaranteed no level of work although she hoped to work two, twelve-hour weekend shifts per month. PRN nurses are generally called in to cover for other nurses who are absent and are required to be available to work in any area of the hospital at any time they indicate they will be available.

suffered reactions from coming in contact with balloons, rubber gloves, and a tourniquet. Watson disclosed that she had experienced various reactions to contact with latex, including difficulty breathing, itching of the hands, eyes, and face, a runny nose, and sinus congestion. In light of Watson's positive responses, Elaine Sheets asked Watson to undergo a blood test, known as a RAST test, to evaluate her possible sensitivity to latex.[2] Watson voluntarily underwent the RAST test on the day she returned to Hughston for her scheduled pre-employment physical. The results indicated that, on a scale of zero to five—zero indicating no latex sensitivity and five indicating a severe latex sensitivity—Watson scored a four, confirming her sensitivity to latex.

Upon receipt of the test results, Sheets conferred with Leftwich and Hughston's CEO, Hugh Tappan, regarding Watson's potential employment at the hospital. Sheets explained to Leftwich and Tappan that, given Watson's high degree of latex sensitivity and the proliferation of latex products throughout the hospital, Watson would be at risk of suffering allergic reactions including anaphylactic shock if she were to work as a nurse at Hughston. Sheets also advised that there was no way for the hospital to ensure that Watson would not be exposed to latex while working at Hughston. In her affidavit, Sheets indicated that her primary concern was that, because Watson would inevitably come into contact with latex products at the hospital and because latex allergies are cumulative, employment at Hughston could worsen Watson's condition and have a negative impact on Watson's health and safety. In addition, Sheets was concerned that Watson could experience an unexpected, serious reaction to latex exposure while at work, potentially endangering patients under her care. Sheets believed that Watson could not perform the functions of her job at Hughston under those circumstances and advised Leftwich and Tappan not to hire Watson. Leftwich and Tappan agreed with Sheets' assessment of the situation.

Leftwich, along with Sheets, met with Watson and explained the results of the blood test to Watson. They informed her that she had tested a four out of five on the RAST test and that she was at risk for a severe reaction to latex. Sheets then informed Watson that, given the proliferation of latex at Hughston, there was no way to ensure that Watson would not come into contact with latex if she were employed there. Watson suggested that she could perform the job as long as she was provided with powder-free, latex-free gloves. However, Sheets explained that changing gloves alone would not ensure that Watson would not be exposed to latex at Hughston.

Based upon Watson's latex allergy, Hughston concluded that it could not subject Watson nor its patients to the risks associated with latex exposure. Therefore, the hospital informed Watson that it could not hire her. Watson, in her deposition, claimed that Sheets and Leftwich told her that she should consider another career and that she should never set foot in a hospital. However, she also conceded that no one at Hughston ever intimated that her career as a nurse was in danger or that she could not work as a nurse in another facility. In their affidavits, both Leftwich and Sheets stated that they never believed or told Watson she could not work in the nursing profession.

2. Sheets is a registered nurse who serves on Hughston's latex committee and has received training regarding latex sensitivity in the health care setting.

After Hughston informed Watson of its decision not to hire her, Watson, of her own volition, saw an allergist for the first time. The allergist, Dr. Robert Chrzanowski, diagnosed her with a latex allergy. The only restriction Dr. Chrzanowski placed on Watson as a result of this allergy was to avoid contact with latex at home and at work. Chrzanowksi advised Watson that her health and safety could be placed at risk with continued exposure to latex. Chrzanowski further advised Watson that the use of latex-free gloves alone would not sufficiently protect her from potential exposure to latex at work. Watson now admits that being provided with latex-free gloves would not eliminate latex from the environment at Hughston.

Watson presently works full-time for St. Francis Hospital as a nurse in the outpatient infusion department as well as part-time at that facility on a PRN basis on weekends. At St. Francis, Watson works in a single room with four patient chairs and one other employee who does not wear latex gloves. However, as Watson described her situation in her deposition, while she does not work on the main floor of St. Francis during the week, she is up on the floor quite a bit, transporting patients, for example. She also works on the floor on weekends in her PRN capacity.

## DISCUSSION

### A. *Summary Judgment Standard*

Summary judgment is appropriate when the record, viewed in the light most favorable to the nonmoving party, shows that no genuine issues of material fact exist and that the moving party is therefore entitled to judgment as a matter of law. *Fed. R.Civ.P.* 56(c). The moving party bears the initial burden of showing no such issues exist. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the moving party has

met its burden, the burden then shifts to the nonmoving party to produce evidence that shows a genuine issue of material fact exists on issues as to which the nonmovant bears the burden of proof at trial. *Id.* The nonmoving party may not rely on "mere allegations," but must point to probative evidence that would be sufficient to raise a jury question. *LaChance v. Duffy's Draft House, Inc.,* 146 F.3d 832, 835 (11th Cir. 1998). Where the nonmoving party bears the burden of proof at trial on an issue and fails to make a showing sufficient to present a jury question on that issue, summary judgment may be entered against them. *Celotex Corp.,* 477 U.S. at 322–23, 106 S.Ct. 2548. Therefore, if no reasonable factfinder could conclude from the evidence presented by Plaintiff in opposition to Defendant's motion for summary judgment that Plaintiff has made out all of the essential elements of her claim, summary judgment must be granted in favor of Defendant.

### B. *Liability Under the ADA*

The Americans with Disabilities Act ("ADA") prohibits employers from discriminating against a qualified individual with a disability because of that individual's disability in regard to various aspects of employment. 42 U.S.C. § 12112(a). Thus, in order to establish a prima facie case of discrimination under the ADA, a plaintiff must show that she (1) is disabled; (2) is a qualified individual; and (3) was subjected to unlawful discrimination because of her disability. *Id.; Gordon v. E.L. Hamm & Assocs.,* 100 F.3d 907, 910–11 (11th Cir.1996).

The initial inquiry, then, is whether Watson's latex allergy constitutes a disability under the ADA. As it is defined in the Act, the term "disability" includes: "(A) a physical or mental impairment that substantially limits one or more of the

major life activities of [the] individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2). An individual is considered disabled if he or she meets any one of these three definitions of "disability." *Gordon,* 100 F.3d at 911.

While Watson cites to all three alternative definitions in her Complaint, she has directed the Court to no evidence suggesting that a "record of impairment" exists. Therefore, the Court will consider whether sufficient evidence exists from which a reasonable jury could conclude that Watson has a disability as defined under subsections (A) and/or (C).

### 1. *"Substantial Impairment" Under Subsection (A)*

Watson argues that her latex allergy constitutes a "physical impairment that substantially limits one or more of [her] major life activities ...." Therefore, she contends that she has a "disability" as that term is defined for purposes of the ADA and that Hughston's refusal to hire her because of that "disability" violates the ADA. Specifically, Watson contends that two major life activities are limited because of her allergy—her ability to breathe and her ability to work. The Court finds that no reasonable jury could conclude from the evidence before the Court that Watson's latex allergy substantially limits her ability to breathe or work. Therefore, Watson has no "disability" as that term is defined under the ADA. Accordingly, she cannot maintain her ADA claim.

Preliminarily, the Court notes that the ADA does not define "major life activities" or "substantially limits." In determining whether someone's "major life activities" have been "substantially limited" because of a "physical or mental impairment," the courts have sought guidance from the regulations promulgated by the Equal Employment Opportunity Commission ("EEOC"). *See* 42 U.S.C. § 12116 (mandating that the EEOC issue such regulations). These regulations provide that "major life activities" include "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i). The regulations further define "substantially limits" as being "unable to perform a major life activity" or "significantly restricted as to the condition, manner or duration" in which he or she performs a major life activity. 29 C.F.R. § 1630.2(j)(1)(i)-(ii); *see also Toyota Motor Mfg. Ky., Inc. v. Williams,* 534 U.S. 184, 122 S.Ct. 681, 691, 151 L.Ed.2d 615 (2002) ("[S]ubstantially" in the phrase "substantially limits" suggests "considerable" or "to a large degree."). Whether an individual's ability to perform a major life activity is "substantially limited" is to be determined by examining three factors: (1) the nature and severity of the impairment; (2) the duration or expected duration of the impairment; and (3) the permanent or long term impact, or expected such impact, of or resulting from the impairment. 29 C.F.R. § 1630.2(j)(2).

### (a) Breathing

■ Breathing is obviously a "major life activity" under anyone's definition. However, applying the above factors to determine whether Plaintiff's breathing has been "substantially limited" by her allergy, the Court must conclude that Watson has no such substantial limitations and is therefore not disabled for ADA purposes. First, the evidence reveals that, while the RAST blood test shows that Watson has a

latex sensitivity of four on a scale of five, her reactions thus far have not been severe. Furthermore, the only restriction placed upon her as a result of the allergy is to avoid contact with latex at work and at home. Moreover, Plaintiff's allergy, while permanent, is dormant unless activated by exposure to latex. In other words, her "impairment" does not restrict her from engaging in the major life activity of breathing. It simply has the possibility of doing so if she exposes herself to latex. Just as people who are allergic to bees are not in danger of a reaction until they are stung, Watson does not suffer any adverse effects because of her allergy to latex unless and until she comes in contact with it. Similarly, the permanent or long term impact of Watson's allergy to latex appears minimal, as long as she avoids contact with the substance.

Perhaps the most persuasive evidence that Watson is not substantially limited in the life activity of breathing is the undisputed evidence that she currently works both full-time and part-time as a registered nurse, a job which not only requires "breathing" but requires one to engage in strenuous "major life activities." Watson described only a few occurrences where she has had trouble breathing because of her latex allergy as opposed to her pre-existing asthma. Based on the foregoing, the Court finds as a matter of law that Watson's latex allergy does not substantially limit her ability to breathe.

### (b) Working

■ Watson also claims that she is substantially limited in the life activity of working. In addition to the three factors previously described, when a plaintiff claims a substantial limitation in the life activity of working, courts consider three additional factors set forth in the regulations adopted pursuant to the ADA. These include:

(A) The geographical area to which the individual has reasonable access;

(B) The job from which the individual has been disqualified because of an impairment, and the number and types of jobs utilizing similar training, knowledge, skills or abilities, within that geographical area, from which the individual is also disqualified because of the impairment (class of jobs); and/or

(C) The job from which the individual has been disqualified because of an impairment, and the number and types of other jobs not utilizing similar training, knowledge, skills or abilities within that geographical area, from which the individual is also disqualified because of the impairment (broad range of jobs in various classes).

29 C.F.R. § 1630.2(j)(3)(ii)(A)-(C).[3] The regulations also specifically provide that "[t]he inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working." 29 C.F.R. § 1630.2(j)(3)(i). Applying these factors to the facts of the case at bar, no reasonable jury could conclude that Watson is substantially limited in the major life activity of working.

Even assuming that her latex allergy is a physical impairment under the ADA,

---

**3.** In a recent case, the Supreme Court made clear that the "class-based analysis" called for when the major life activity in question is working does not apply when a plaintiff claims to be disabled in the performance of other major life activities. *Toyota Motor Mfg. Ky., Inc. v. Williams*, 534 U.S. 184, 122 S.Ct. 681, 692–93, 151 L.Ed.2d 615 (2002) ("Nothing in the text of the Act, our previous opinions, or the regulations suggests that a class-based framework should apply outside the context of the major life activity of working.").

Watson is not substantially limited in her ability to work. The evidence clearly shows that Watson is presently holding down both full-time and part-time jobs as a registered nurse at St. Francis hospital. In addition, at her current job at St. Francis, apparently because the level of latex in that environment is lower than at Hughston, the Plaintiff is able to work as a nurse simply by using latex-free gloves. The facts thus illustrate that Watson is unable to work in only one hospital, Hughston, because of her allergy. Accordingly, no reasonable jury could conclude that Watson's allergy substantially limits her ability to work.

Since Watson is not substantially limited in her ability to breathe and/or work, she has no disability under the ADA, unless she can establish that she was "regarded as disabled" by Hughston.

### 2. "Regarded As" Disabled Under Subsection (C)

Watson argues that Hughston "regarded her as disabled," and therefore, she meets the definition of "disability" for ADA purposes. The Court rejects this argument, finding that no evidence has been produced from which a reasonable jury could conclude that Hughston regarded Watson as disabled.

■ In order to prevail under this theory, Watson must show that Hughston rescinded its offer of employment because it regarded her as having a physical impairment as that term is defined by the ADA. *Sutton v. Lader*, 185 F.3d 1203, 1208 (11th Cir.1999); *Gordon v. E.L. Hamm & Assocs.*, 100 F.3d 907, 913 (11th Cir.1996). Under the statute, an individual is regarded as being disabled when the individual:

(1) has an impairment that does not substantially limit a major life activity,

but is treated by an employer as though it does; (2) has an impairment that limits a major life activity only because of others' attitudes towards the impairment; or (3) has no impairment whatsoever, but is treated by an employer as having a disability as recognized by the ADA.

*Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318, 1327 n. 2 (11th Cir.1998) (citing 29 C.F.R. § 1630.2(1)). A plaintiff pursuing a "regarded as" theory of disability must show that the perceived impairment substantially limited her ability to perform one or more major life activities. *Standard*, 161 F.3d at 1327. Since Plaintiff suffered from no breathing limitations of which Hughston could have been aware, it is absolutely clear that Hughston did not regard Watson as disabled in the major life activity of breathing.

■ Plaintiff's contention that Hughston regarded her as disabled to work has some superficial appeal, but likewise does not withstand closer scrutiny. As previously explained by the Court, the record is devoid of any evidence from which a reasonable juror could conclude that Watson was substantially impaired from working. Likewise, no evidence exists that Hughston regarded Watson as so impaired. Two recent Supreme Court cases support the Court's conclusion. *See Murphy v. United Parcel Serv., Inc.*, 527 U.S. 516, 119 S.Ct. 2133, 144 L.Ed.2d 484 (1999); *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999).

In *Sutton v. United Air Lines, Inc.*, a situation strikingly similar to that faced by Watson, twin sisters with severe myopia applied to be commercial airline pilots for United. 527 U.S. 471, 475, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999). They were reject-

ed because their uncorrected eyesight did not meet the company's minimum vision requirements. *Id.* at 476, 119 S.Ct. 2139. The sisters' complaint was dismissed by the District Court for failure to state a claim upon which relief could be granted. *Id.* The Supreme Court affirmed, finding that the sisters had failed to allege sufficiently that United "regarded" them as disabled within the meaning of the ADA. *Id.* at 475, 119 S.Ct. 2139.

Just as the sisters in *Sutton* were physically impaired by their myopia, Watson no doubt has certain limitations due to her latex allergy. However, like United's vision requirement, Hughston's requirement that its employees must be able to work in a latex-rich environment without the risk of harming themselves or their patients does not, of itself, establish a claim that Hughston regarded Watson as substantially limited in the life activity of working. *See id.* at 490, 119 S.Ct. 2139. Under the Court's holding in *Sutton,* an employer is "free to decide that some limiting, but not *substantially* limiting, impairments make individuals less than ideally suited for a job." *Id.*

As discussed previously, in order to be "regarded as" having a disability, a plaintiff must be able to show that he or she is substantially limited in a major life activity. When the activity is working,

> one must be precluded from more than one type of job, a specialized job, or a particular job of choice. If jobs utilizing an individual's skills ... are available, one is not precluded from a substantial class of jobs. Similarly, if a host of

different jobs are available, one is not precluded from a broad range of jobs.

*Id.* at 492, 119 S.Ct. 2139. Under this definition, the Supreme Court held that the twin sisters had failed to show that United regarded them as being disabled simply because it would not offer them employment as global airline pilots, stating "[b]ecause the position of global airline pilot is a single job, [the sisters'] allegation[s] do[] not support the claim that [they were regarded as] having a *substantially limiting* impairment." *Id.* at 492–93, 119 S.Ct. 2139. The Court continued by explaining that, even assuming that all airlines adopted similar vision requirements and that this would represent a substantial limitation on the life activity of working, such a showing would not be enough to prove the sisters were regarded as being disabled by United. *Id.* at 493, 119 S.Ct. 2139. The Court found that an otherwise valid job requirement does not become a substantial limitation "because it *would* limit a person's employment opportunities in a substantial way *if* it were adopted by a substantial number of employers." *Id.* at 493–94, 119 S.Ct. 2139.

Applying the rationale in *Sutton* to the present case, Watson's claim that Hughston regarded her as being disabled because of her latex allergy likewise must fail. Given the proliferation of latex at Hughston, a requirement that its employees not suffer from latex sensitivities is a valid job requirement.[4] Furthermore, just as the sisters in *Sutton* had opportunities to be pilots elsewhere, though they were foreclosed from being global airline pilots,

---

4. The Supreme Court recently reaffirmed the validity of such job requirements. In *Chevron U.S.A., Inc. v. Echazabal,* 536 U.S. 73, ——, 122 S.Ct. 2045, 2047, 153 L.Ed.2d 82 (2002), the Court found that an EEOC regulation which authorized an employer to refuse to hire an employee with a disability because the employee posed a threat to himself or others did not exceed the scope of the ADA.

Watson's nursing abilities can be utilized (and, in fact, are being used) in jobs other than the PRN job at Hughston. Apparently, all hospitals in the Columbus, Georgia, area do not have latex sensitivity requirements similar to those in place at Hughston. Even if they did, that fact alone, as made clear by the Supreme Court in *Sutton*, would not be enough to present a jury question on whether Hughston regarded Watson as being disabled.

Similarly, in *Murphy v. United Parcel Service, Inc.*, a case decided the same day as *Sutton*, the Supreme Court held that an employee who had been dismissed because of his inability to obtain a DOT certification because of high blood pressure was not "regarded as" substantially limited in the life activity of working, since he was generally employable in other mechanic positions. 527 U.S. 516, 524, 119 S.Ct. 2133, 144 L.Ed.2d 484 (1999). Under reasoning substantially similar to that employed in *Sutton*, the Court noted once again that being foreclosed from a particular job is not sufficient when a plaintiff is able to work in other similar capacities. *Id.* at 523, 119 S.Ct. 2133. Specifically, even though Murphy was unable to obtain DOT certification to drive commercial vehicles because of his high blood pressure, the Court noted that it was undisputed he was employable as a mechanic and in jobs that did not require one be able to drive commercial vehicles. *Id.* at 524, 119 S.Ct. 2133.

In the case at bar, though Watson is unable to work as a nurse in a surgical hospital like Hughston, she is generally employable as a nurse, as evidenced by her present employment at St. Francis. Based on the foregoing, the Court finds that no reasonable jury could conclude that

Hughston "regarded Watson as disabled" as that phrase is defined for ADA purposes.

### CONCLUSION

Watson has failed to produce sufficient evidence from which a reasonable jury could conclude that she suffered from a physical or mental impairment that substantially limits one or more of her major life activities. Watson has likewise failed to produce sufficient evidence from which a reasonable jury could conclude that Hughston regarded her as having such an impairment. Therefore, Plaintiff has failed to establish that she is disabled for purposes of the ADA. Having failed to establish an essential element of a prima facie case for ADA liability, Plaintiff's claims are subject to summary judgment.[5] Accordingly, Defendant's motion for summary judgment is granted as to all of Plaintiff's claims.

---

5. Having found that Plaintiff's condition does not constitute a disability under the ADA, the Court need not address Defendant's additional arguments in support of its motion for summary judgment