# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 98-2019EA

_____

Marie Land, individually and as natural  *
guardian of Megan Land, a minor,          *
                                          *
            Appellant,                    *    Appeal from the United States
                                          *    District Court for the Eastern
    v.                                    *    District of Arkansas.
                                          *
Baptist Medical Center,                   *
                                          *
            Appellee.                     *

_____

Submitted:  November 19, 1998
Filed:  January 6, 1999

_____

Before RICHARD S. ARNOLD, FAGG, and HALL,* Circuit Judges.

_____

FAGG, Circuit Judge.

After Megan Land broke out in splotches and hives while at Baptist Medical Center's (Baptist) day care, Megan's doctor determined Megan is allergic to peanuts and peanut derivatives. Because of her allergy, Megan must avoid foods containing peanuts and their derivatives and, if exposed, must receive medication to combat any resulting limitation on her ability to breathe. After Megan suffered a second allergic reaction at day care, Baptist refused to provide day care services to Megan. Megan's

_____

*The Honorable Cynthia Holcomb Hall, United States Circuit Judge for the Ninth Circuit, sitting by designation.

mother, Marie Land, then filed this lawsuit under the Americans with Disabilities Act (ADA) and the Arkansas Civil Rights Act (ACRA). See 42 U.S.C. § 12182(a) and (b)(1)(E) (1994); Ark. Code Ann. § 16-123-107 (Michie Supp. 1995). The district court granted summary judgment for Baptist, and Land appeals. Having reviewed the district court's decision de novo and having viewed the record in Land's favor, we conclude the record presents no genuine issue of material fact and Baptist is entitled to summary judgment as a matter of law. See Aucutt v. Six Flags Over Mid-America, Inc., 85 F.3d 1311, 1315 (8th Cir. 1996).

Initially, Land contends the district court committed error in deciding Megan was not disabled under the ADA. The ADA defines "disability" as either "a physical or mental impairment that substantially limits one or more of the major life activities of [an] individual," "a record of such an impairment," or "being regarded as having such an impairment." See 42 U.S.C. § 12102(2)(A-C). Land claims Megan is disabled under any of these definitions, so we address each definition in turn.

First, Land claims Megan's allergy is a physical impairment that substantially limits her major life activities of eating and breathing. For purposes of the ADA, a physical impairment is defined as a physiological disorder affecting body systems such as digestion and respiration, see 28 C.F.R. § 36.104(1)(i) (1998) (definition of disability), and we agree that Megan's allergy fits within this definition. We also agree that eating and breathing are major life activities within the contemplation of the ADA. See id. § 36.104(2) (definition of disability) (major life activities are fundamental functions such as "caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working"); Bragdon v. Abbott, 118 S. Ct. 2196, 2205 (1998) (major life activities include those "central to the life process itself"). The pivotal question thus becomes whether Megan's allergy substantially limits her ability to eat or breathe, and we conclude that it does not. A major life activity is substantially limited if an individual is unable to "perform a basic function that the average person in the general population can perform" or is significantly

restricted in "the condition, manner, or duration under which [she] can perform a particular major life activity as compared to an average person in the general population." Snow v. Ridgeview Med. Ctr., 128 F.3d 1201, 1206 (8th Cir. 1997); see 29 C.F.R. § 1630.2(j)(1) (1998). Whether a major life activity is substantially limited is an individualized and fact-specific inquiry. See Colwell v. Suffolk County Police Dep't, 158 F.3d 635, 643 (2d Cir. 1998). In this case, Megan's allergy is not substantially limiting because, as her doctor stated, Megan's allergy impacts her life only "a little bit." Although Megan cannot eat foods containing peanuts or their derivatives, the record does not suggest that Megan suffers an allergic reaction when she consumes any other kind of food or that her physical ability to eat is in any way restricted. Additionally, the record shows Megan's ability to breathe is generally unrestricted, except for the limitations she experienced during her two allergic reactions. See Zirpel v. Toshiba Am. Info. Sys., Inc., 111 F.3d 80, 81 (8th Cir. 1997) (although speaking and breathing were hampered during actual panic attack, disorder did not substantially limit plaintiff's major life activities where attacks were infrequent and very manageable); Robinson v. Global Marine Drilling Co., 101 F.3d 35, 37 (5th Cir. 1996), cert. denied, 117 S. Ct. 1820 (1997) (several instances of asbestosis-related shortness of breath did not substantially limit major life activity of breathing). Thus, although Megan's allergic reaction to peanut-laden foods affects her eating and breathing, her allergy does not substantially or materially limit these major life activities within the definition of disability under the ADA. See Snow, 128 F.3d at 1207.

Next, Land contends Megan is disabled under the ADA because her two allergic reactions at day care created a record of a substantially limiting physical impairment. We disagree. While Megan's allergic reactions "are evidence of a history of an impairment, they are not evidence of a history of a disability." Robinson, 101 F.3d at 37 (emphasis omitted); see Colwell, 158 F.3d at 645. As we have already stated, Megan's peanut-related allergy does not substantially limit her abilities to eat and breathe.

Finally, Land asserts Megan is disabled under the ADA because Baptist regarded Megan as substantially limited in her ability to attend day care. Again, we disagree. In our view, major life activities do not include those activities like day care attendance that, although important to a particular plaintiff, are not significant within the contemplation of the ADA. See id. at 642-43 (gardening, golfing, and shopping are insufficiently fundamental to be major life activities). Even if we assume day care attendance is a major life activity, there is no evidence in the record that Baptist regarded Megan's allergy as substantially limiting her ability to attend day care. Quite to the contrary, Baptist viewed Megan as a normal, healthy, active toddler who was only unable to attend day care at Baptist because the large number of children compared to the number of staff there prevented Baptist from ensuring Megan would not come into contact with foods containing peanuts or peanut derivatives. The fact that Baptist believed its staff was spread too thin to monitor Megan's dietary limitations does not permit the inference that Baptist regarded Megan as incapable of eating a broad range of foods or of attending other day cares better able to monitor Megan's food intake. See id. at 647. Because Megan does not fit within the meaning of any of the ADA's definitions of disability, the district court properly granted summary judgment to Baptist on both Megan's ADA claim and Land's claim that Baptist discriminated against Land because of her association with a disabled individual.

Additionally, Land contends the district court committed error in deciding Megan was not disabled within the meaning of the ACRA. The Arkansas Supreme Court has not yet decided whether a food allergy is a disability under the ACRA, and so we "must decide 'what the [Arkansas Supreme Court] would probably hold were it called upon to decide the issue.'" Lenhardt v. Basic Inst. of Tech., Inc., 55 F.3d 377, 379 (8th Cir. 1995) (quoting Hazen v. Pasley, 768 F.2d 226, 228 (8th Cir. 1985)). The definition of disability in both the ACRA and the ADA are in all relevant respects the same, compare Ark. Code Ann. § 16-123-102(3) with 42 U.S.C. § 12102(2)(A), and we believe the Arkansas Supreme Court would consider analogous federal ADA decisions in deciding the issue confronting us in this case, Lenhardt, 55 F.3d at 380.

We thus affirm the district court's grant of summary judgment on the ACRA claim for the same reasons we affirm summary judgment on the ADA claim

RICHARD S. ARNOLD, Circuit Judge, dissenting.

I respectfully dissent. We are required to draw all reasonable inferences in Ms. Land's favor. It is my view that Dr. Wheeler's deposition raises a genuine issue of material fact as to whether Megan's peanut allergy substantially limits a major life activity. Dr. Wheeler, who saw Megan after she developed swelling of the eyes, discoloration, hives, and itching following exposure to peanut butter, testified that his examination of Megan suggested that she is "exquisitely sensitive" to peanuts and peanut products. He testified that her reaction to peanuts could range from a mild case of hives to death. He also testified that the recommended treatment is strict avoidance of peanuts and peanut products, and to have available at all times an epinephrine injection in the event that Megan is accidentally exposed to peanuts and has a severe allergic reaction.

On the basis of Dr. Wheeler's testimony, I believe an inference may reasonably be drawn that Megan is substantially limited in her ability to eat. She (or her care-giver) "must read every label of every product that is purchased from a store and . . . she must be very careful whenever she is at a party or a restaurant." App. Br. at 8. So long as Megan avoids peanuts and peanut products, she can lead the normal, active life of a toddler. If she ingests a peanut product, however, and has a severe reaction that is not promptly treated, she may go into anaphylactic shock or, worse, die. The risk, therefore, that Megan may accidentally ingest peanuts (a risk that may be slight, if labels are accurate and those responsible for her care are vigilant) must be understood in light of the potential for serious injury.

An interpretive rule issued by the Department of Agriculture supports this position. The rule, <u>Meal Substitutions for Medical or Other Special Dietary Reasons,</u>

Food and Nutrition Service Instruction 783-2, Rev. 2 (Oct. 14, 1994), was designed to guide schools and other institutions when deciding whether meal substitutions for handicapped persons are required in certain food programs administered by the Department. The rule interprets, for persons with food allergies, the meaning of the word "handicapped," as it is used in the Department's regulations implementing the Rehabilitation Act of 1973. See 7 C.F.R. § 15b.1 et seq. (1998). The rule, which was issued by the Director of the Child Nutrition Division, provides that:

> Generally, participants with food allergies or intolerances, or obese participants are not "handicapped persons", as defined in 7 C.F.R. 15b.3(i), and school food authorities, institutions and sponsors are not required to make substitutions for them. <u>However, when in the physician's assessment food allergies may result in severe, life-threatening reactions (anaphylactic reactions) or the obesity is severe enough to substantially limit a major life activity, the participant then meets the definition of "handicapped person", and the food service personnel must make the substitutions prescribed by the physician</u>.

FNS Instruction 783-2, Rev. 2, at p. 4 (emphasis added). Implementation of the Rehabilitation Act "was not delegated to a single agency," as the Supreme Court noted recently. Bragdon v. Abbott, 118 S. Ct. 2196, 2207 (1998). Indeed, "the well-reasoned views of the agencies implementing a statute 'constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance.' " Id. (quoting Skidmore v. Swift & Co., 323 U.S. 134, 149-40 (1944)).

I believe the Agriculture Department's description of a person as handicapped who has been assessed by a physician as having a food allergy that may result in "severe, life-threatening reactions," coupled with Dr. Wheeler's testimony, raises a question of fact that is properly decided by a jury. The historical facts presented by the plaintiff in this case are "subject to more than one interpretation," and, accordingly,

"[t]he trier of fact at trial should decide which interpretation is more persuasive." St. Louis County Bank v. United States, 674 F.2d 1207, 1211 (8th Cir. 1982).

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.