**Arthur McLORN, III, Plaintiff,**

v.

**COMMUNITY HEALTH SERVICES d/b/a Heartland Regional Medical Center and Carol Stricklin, in her official and individual capacity, Defendants.**

No. 05–CV–4198–JPG.

United States District Court,
S.D. Illinois.

Oct. 18, 2006.

Richard J. Behr, Jason W. Kinser, St. Louis, MO, for Defendants.

### MEMORANDUM AND ORDER

GILBERT, District Judge.

This matter comes before the Court upon the motion for summary judgment filed by defendant Community Health Systems, Inc. (misnamed in the complaint as Community Health Services, Inc.), doing business as Heartland Regional Medical Center ("Heartland"). (Doc. 28). Plaintiff Arthur McLorn, III, ("McLorn") has responded to the motion (Docs. 28 & 48), and Heartland has replied to that response (Doc. 46).

### I. Standard for Summary Judgment

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *see Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Spath v. Hayes Wheels Int'l–Ind., Inc.,* 211 F.3d 392, 396 (7th Cir.2000). The reviewing court must construe the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in favor of that party. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Spath,* 211 F.3d at 396. Where the moving party fails to meet its strict burden of proof, a court cannot enter summary judgment for the moving party even if the opposing party fails to present relevant evidence in response to the motion. *Cooper v. Lane,* 969 F.2d 368, 371 (7th Cir.1992).

In responding to a summary judgment motion, the nonmoving party may not sim-

ply rest upon the allegations contained in the pleadings but must present specific facts to show that a genuine issue of material fact exists. Fed.R.Civ.P. 56(e); *Celotex*, 477 U.S. at 322–26, 106 S.Ct. 2548; *Johnson v. City of Fort Wayne*, 91 F.3d 922, 931 (7th Cir.1996). A genuine issue of material fact is not demonstrated by the mere existence of "some alleged factual dispute between the parties," *Anderson*, 477 U.S. at 247, 106 S.Ct. 2505, or by "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Michas v. Health Cost Controls of Ill., Inc.*, 209 F.3d 687, 692 (7th Cir.2000). Rather, a genuine issue of material fact exists only if "a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Anderson*, 477 U.S. at 252, 106 S.Ct. 2505; *accord Michas*, 209 F.3d at 692.

## II. Facts

### A. *Evidence Considered*

█ As a preliminary matter, the Court must decide how it will treat McLorn's response to Heartland's motion for summary judgment. McLorn submitted two documents purporting to be affidavits, his own and that of coworker Victor Lane. Heartland asks the Court not to consider the document that purports to be McLorn's affidavit because it is undated, unsigned and unsworn. Heartland does not object to Lane's affidavit, to which Lane swore before a notary public. In response to this request, McLorn resubmitted his purported affidavit, this time signed and accompanied by a statement by a notary public: "This instrument was acknowledged before me July 18, 2006 by Arthur McLorn, III."

It is well-established that in ruling on a motion for summary judgment, the Court considers only evidence that would be ad-

missible at trial. *See Woods v. City of Chicago*, 234 F.3d 979, 988 (7th Cir.2000). To be admissible, testimony must be sworn, for example, in an affidavit or in a deposition. If it is not, the Court must disregard it. *See Pfeil v. Rogers*, 757 F.2d 850, 859 (7th Cir.1985); *see, e.g., Garner v. Kinnear Mfg. Co.*, 37 F.3d 263, 268–69 (7th Cir.1994). "Affidavits are admissible in summary judgment proceedings if they are made under penalties of perjury; only unsworn documents purporting to be affidavits may be rejected." *Pfeil*, 757 F.2d at 859. McLorn's testimony is neither sworn as true before a notary public nor sworn under penalty of perjury in the body of his statement, *see* 28 U.S.C. § 1746, either of which would have rendered his statement admissible for summary judgment purposes. *See Pfeil*, 757 F.2d at 859. On the contrary, McLorn merely "acknowledges" his statement. This is not the equivalent of swearing that the statement is true, and the Court cannot therefore consider the statement in ruling on this motion.

It is important to note that McLorn was aware of the need to present competent evidence in opposition to summary judgment; he was not blind-sided as a *pro se* litigant by this requirement. On June 22, 2006, the Court gave McLorn the warning that is required to be given to all *pro se* parties against whom summary judgment is sought. *See Timms v. Frank*, 953 F.2d 281, 285 (7th Cir.1992); *Lewis v. Faulkner*, 689 F.2d 100, 102 (7th Cir.1982). Specifically, the Court warned McLorn that it would "take as true any fact alleged in [Heartland's] affidavits unless McLorn contradict[ed] that fact with counter-affidavits or other documentary evidence." It further warned McLorn that if he failed to contradict Heartland's evidence, the Court could grant judgment in favor of Heartland and could dismiss this case. McLorn's presentation of Lane's affidavit, which was sworn before a notary public,

demonstrates that he knew what was required to render testimony admissible. He simply failed to take the necessary steps with respect to his own "affidavit."

### B. *Facts*

Viewing the admissible evidence and making all reasonable inferences in McLorn's favor, the Court finds the following relevant facts.

Beginning in August 2004, Heartland employed McLorn in its Environmental Services Department to perform janitorial services. As a part of this job, McLorn was required to wear a protective suit and gloves made of synthetic latex whenever he could be exposed to biohazardous materials such as blood and other bodily fluids. For tasks where contact with biohazardous materials was not likely, McLorn was only required to wear synthetic latex gloves but not the entire synthetic latex suit. Heartland did not use natural latex products except in certain controlled areas because of the dangers posed to people who are allergic to natural latex. At the time of his hiring, McLorn did not know of and therefore did not disclose any allergy, illness or injury that would have prevented him from performing his job at Heartland. He also did not have any skin irritation or scars on his arms at that time.

Several days after he started his job at Heartland, McLorn developed an oozing rash on his hands and arms. Because Heartland's infection control policies forbid working with open sores, one of McLorn's supervisors sent him to have his arms wrapped to cover the sores, and then he returned to work and completed his shift.

In November 2004, McLorn noticed his rash again and decided to see a doctor about it. On November 9, 2004, the doctor recommended that McLorn refrain from wearing the synthetic latex suit for two weeks and only wear non-latex gloves. Heartland assigned McLorn to tasks that did not require him to wear the synthetic latex suit but that did, at times, require him to wear the synthetic latex gloves. During that time, McLorn's skin started to clear up.

At the end of the two weeks, Heartland reassigned McLorn his regular duties, which required him to wear the synthetic latex suit and gloves, and his skin problems worsened.[1] Heartland then assigned McLorn once again to tasks where he would only be required to wear synthetic latex gloves but not the full protective suit.

On November 25, 2004, McLorn reported to Heartland's emergency room with elevated blood pressure attributable to his use of the synthetic latex and was sent home for the rest of his shift. When he returned to work, Heartland gave him cotton gloves to wear under his synthetic latex gloves. The cotton gloves did not lessen the irritation caused by the synthetic latex gloves, so McLorn eventually stopped wearing the synthetic latex gloves and continued to perform his job tasks.

On December 24, 2004, Stricklin saw McLorn working without synthetic latex gloves. After checking to make sure McLorn would not be working around people allergic to natural latex, she gave him four pairs of natural latex gloves to wear underneath the synthetic latex gloves, but warned him that he could not continue to wear the natural latex gloves because of the danger of triggering allergic reactions of others in the hospital.

---

1. In his unsworn statement, McLorn states that his blood pressure also became elevated because he wore the synthetic latex suit. He states that he constantly itched, his hands and wrists hurt, his skin burned, blistered and cracked open, and his blood pressure became dangerously high. He states that he could not sleep or pick up his children, who were frightened of his hands and arms.

In early January 2005, McLorn refused to wear the synthetic latex gloves. Heartland sent him home and several days later terminated him. McLorn's rash appeared only when he wore synthetic latex, and a little while after he stopped working at Heartland with the synthetic latex, his rash cleared up and he has been fine and able to work other jobs since then.[2]

In October 2005, McLorn filed this lawsuit. Count I alleges a claim against Heartland under Title I of the Americans With Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 *et seq.,* based on Heartland's (1) failure to accommodate his disability by providing alternative gloves, (2) decision to terminate him because of his disability and (3) otherwise discriminating against him based on his record of disability or its perception that he was disabled. Count II alleges a claim against Heartland under § 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, based on the same conduct as alleged with respect to Count I. McLorn has voluntarily dismissed Count III, a state law claim against Stricklin for negligent infliction of emotional distress.

Heartland filed this summary judgment motion challenging McLorn's ability to prove that he is disabled either by an actual impairment, a record of disability or a perception of disability.

### III. Analysis

The ADA provides, in pertinent part, that an employer shall not "discriminate against a qualified individual with a disability." 42 U.S.C. § 12112(a). It also requires employers to provide reasonable accommodations for the physical and mental limitations of qualified disabled employees to enable them to perform the essential functions of their jobs. 42 U.S.C. § 12112(b)(5)(A). The Rehabilitation Act incorporates these same prohibitions.[3] *See* 29 U.S.C. § 794(d).

█ To prove a discrimination claim or a failure to accommodate claim under either statute, a plaintiff must show, among other things, that he was a disabled person as defined by the ADA. *Jackson v. City of Chicago,* 414 F.3d 806, 810 n. 2 (7th Cir. 2005) (citing *Silk v. City of Chicago,* 194 F.3d 788, 798 n. 6 (7th Cir.1999)) (discrimination); *Winfrey v. City of Chicago,* 259 F.3d 610, 614 (7th Cir.2001) (failure to accommodate). Under the ADA, a person is "disabled" if he:

(a) [h]as a physical or mental impairment that substantially limits one or more of the major life activities of such individual;

(b) has a record of such impairment; or

(c) is regarded as having such an impairment.

*Mattice v. Mem'l Hosp. of S. Bend,* 249 F.3d 682, 684 (7th Cir.2001); 42 U.S.C. § 12102(2). Heartland believes that McLorn cannot show that he is disabled under any of the three ways of establishing a disability.

### A. *Impairment that Substantially Limits Major Life Activity*

Heartland believes that McLorn is unable to establish that he has a physical

---

**2.** In his unsworn statement, McLorn stated that his reactions to the synthetic latex took several months to go away and that he still has scars.

**3.** The standards applicable to claims under the Rehabilitation Act are the same as the standards under the ADA except that under the Rehabilitation Act the plaintiff must also prove that he was involved in a program which received federal financial assistance. *Jackson v. City of Chicago,* 414 F.3d 806, 810 n. 2 (7th Cir.2005) (citing *Silk v. City of Chicago,* 194 F.3d 788, 798 n. 6 (7th Cir.1999)); *see* 29 U.S.C. § 794(d). Therefore, although the Court makes explicit reference only to the ADA in this section, its analysis applies equally to the Rehabilitation Act claim pled in Count II.

impairment (mental impairment is not at issue in this case) that substantially limits one or more of his major life activities. Heartland argues that even a severe and permanent allergy does not substantially limit a major life activity where an allergic reaction is dormant and is only triggered by exposure to a specific allergen. *See Ammons–Lewis v. Metropolitan Water Reclamation Dist. of Greater Chicago,* 2004 WL 2453835, No. 3 C 0855 (N.D.Ill. Nov. 1, 2004). It believes that since McLorn's allergic reaction is only triggered when he comes into contact with synthetic latex and since he only comes into contact with synthetic latex sufficient to trigger an allergic reaction when working at Heartland, his allergy does not substantially impair any of his major life activities.

▉ To determine whether a plaintiff has an impairment that substantially limits a major life activity, the Court conducts three inquiries:

> First, we consider whether [the plaintiff's alleged disability] was a physical impairment. Second, we identify the life activity upon which [the plaintiff] relies ... and determine whether it constitutes a major life activity under the ADA. Third, tying the two statutory phrases together, we ask whether the impairment substantially limited the major life activity.

*Bragdon v. Abbott,* 524 U.S. 624, 631, 118 S.Ct. 2196, 141 L.Ed.2d 540 (1998); *accord Lawson v. CSX Transp., Inc.,* 245 F.3d 916, 923 (7th Cir.2001). The plaintiff is entitled to an individualized assessment of his particular circumstances rather than an assessment based on how a specific impairment usually affects those who have it. *Branham v. Snow,* 392 F.3d 896, 902–03 (7th Cir.2004) (citing *Sutton v. United Air Lines, Inc.,* 527 U.S. 471, 483–84, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999)).

In this case, the first two questions are fairly straightforward. It appears that McLorn is physically impaired by his allergy. When he is exposed to synthetic latex, his skin becomes itchy, blistery, cracked and painful, and his blood pressure becomes elevated. He also claims to be impaired in several major life activities. McLorn claims that his impairment limits his ability to perform manual tasks, sleep, breathe and work. These activities all constitute major life activities. *See* 29 C.F.R. § 1630.2(I) (major life activities include tasks such as "caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working.")

The third inquiry is a bit more difficult. To determine if an impairment substantially limits a major life activity, the Court considers "(i) The nature and severity of the impairment; (ii) The duration or expected duration of the impairment; and (iii) The permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment." 29 C.F.R. § 163–/2(j)(2).

There is no evidence from which a reasonable jury could conclude that McLorn's allergy to synthetic latex substantially impairs any of his major life activities. The evidence shows that McLorn's allergic reaction is somewhat severe, but not life-threatening. However, he experiences this reaction only when he comes into contact with synthetic latex, which he has apparently only done while working at Heartland. Although it took some time after leaving Heartland for his allergy symptoms to go away—maybe as much as several months—they did go away, and they did not reappear. In fact, McLorn testified at his deposition that he was fine once the symptoms went away, and the record shows that he was able to obtain later employment in the cleaning/janitorial,

painting and auto repair fields. Rather than demonstrating a substantial impairment of a major life activity, the evidence demonstrates mere periodic episodes of allergic reactions that occurred only when McLorn was in direct contact with latex. *See, e.g., Moore v. J.B. Hunt Transp., Inc.,* 221 F.3d 944, 952 (7th Cir.2000) (intermittent flare-ups may not render a condition a "disability" under the ADA); *Land v. Baptist Med. Ctr.,* 164 F.3d 423, 424–25 (8th Cir.1999) (peanut allergy did not substantially impair major life activity because breathing was only restricted during allergic reactions).

Furthermore, the record contains no evidence that McLorn's contact with synthetic latex is so common in his ordinary life that his periodic flare-ups after direct contact with synthetic latex substantially impair his major life activities of performing manual tasks, sleeping, breathing or working in a broad class of jobs. *Compare McAndrew v. Mercy Health Partners,* No. Civ. A. 3:CV–01–0317, 2003 WL 23573863, *6 (M.D.Pa. Dec. 3, 2003) (finding that natural latex allergy may limit plaintiff in the major life activity of socializing because it "has prevented her from going to restaurants, church, and even her son's school."). In sum, the evidence simply is not sufficient for a reasonable jury to find that McLorn was substantially limited in a major life activity by his allergy to synthetic latex.

### B. *Record of Disability*

Heartland argues that McLorn had no history of being allergic to synthetic latex until he was so diagnosed in November 2004 and that he has never had a history of substantial impairment from his synthetic latex allergy. A person has a history of disability under the ADA if he "has a history of, or has been misclassified as having, a mental or physical impairment that substantially limits one or more major life activities." 29 C.F.R. § 1630.2(k). To succeed under this theory, as under the prior theory, a plaintiff must show that the impairment of which he has a record poses a substantial limit on a major life activity. *Rooney v. Koch Air, LLC,* 410 F.3d 376, 381 (7th Cir.2005).

The Court has already determined that McLorn has not submitted evidence that his allergy to synthetic latex substantially limits a major life activity. Nor has he submitted evidence that his record reflects a substantial limitation from his allergy. Thus, his record of having such an allergy since November 2004 is not sufficient to show that he is disabled under the "record of disability" option.

### C. *Regarded as Having a Disability*

Heartland argues that no reasonable jury could find that it regarded McLorn as disabled in light of Heartland's repeated efforts to return McLorn to work or to give him additional protective gloves to protect him from contact with synthetic latex. In order to show that he is "regarded as disabled" under the ADA, a plaintiff can show that he:

(1) Has a physical or mental impairment that does not substantially limit major life activities but is treated by a covered entity as constituting such limitation;

(2) Has a physical or mental impairment that substantially limits major life activities only as a result of the attitudes of others toward such impairment; or

(3) Has none of the impairments defined in [the regulations] but is treated by a covered entity as having a substantially limiting impairment.

29 C.F.R. § 1630.2(I). In order to prevail under any of these theories, the plaintiff must show that the employer "believe[d], rightly or wrongly, that the employee has an impairment that substantially limits one or more of the major life activities." *Kupstas v. City of Greenwood,* 398 F.3d

609, 612 (7th Cir.2005). "[I]f the condition that is the subject of the employer's belief is not substantially limiting, and the employer does not believe that it is, then there is no violation of the ADA under the 'regarded as' prong of the statute." *Mack v. Great Dane Trailers,* 308 F.3d 776, 782 (7th Cir.2002); *accord Kupstas,* 398 F.3d at 612.

In this case there is simply no evidence from which a reasonable jury could find that any Heartland personnel believed McLorn's allergy to synthetic latex or any belief about that allergy's effect on him impaired a major life activity. There is no evidence that Heartland's personnel thought he was substantially impaired in his ability to perform manual tasks, sleep, breathe, work or any other major life activity. In fact, throughout his allergic reactions, they continued to treat him as a capable worker, attempting to accommodate his allergy by wrapping his arms, giving him protective cotton or latex gloves (to the extent permitted by their policy of limiting natural latex in the facility), and limiting some of his tasks to those only requiring synthetic latex gloves and not the entire protective synthetic latex suit. No reasonable jury could find from this evidence that Heartland regarded McLorn as substantially limited in a major life activity because of his allergy to synthetic latex.

## IV. Conclusion

For the foregoing reasons, the Court finds that there is no genuine issue of material fact regarding whether McLorn is disabled under the ADA or the Rehabilitation Act and that Heartland is entitled to

4. Even if the Court had considered McLorn's statement as an affidavit, its conclusion would be the same: he cannot satisfy the requirements for being disabled under any of the three alternatives. His statement provides a graphic description of his allergic reactions, but also concedes that they went away several

judgment as a matter of law.[4] The Court therefore **GRANTS** Heartland's motion for summary judgment (Doc. 28) and **DIRECTS** the Clerk of Court to enter judgment accordingly.

months after he stopped working for Heartland. His statement also disputes minor details (e.g., which supervisor sent him to the emergency room, on which date he was given natural latex gloves) that are not relevant to the outcome of this motion.